LUSTIG v LUSTIG

Docket No. 48703. Submitted June 20, 1980, at Detroit.—Decided August 28, 1980.

Plaintiff, David Lustig, and defendant, Susan M. Lustig, were divorced on January 12, 1972, and custody of their two minor children, Joshua and Jeremy, was granted to defendant. A consent order in March of 1972 granted defendant permission to move the minor children to California. On September 22, 1978, by stipulation and order, the custody of 13-year-old Joshua, the elder son, was changed to plaintiff. In August of 1979, while 9-year-old Jeremy was in Michigan visiting, plaintiff filed a motion in the Oakland Circuit Court for temporary custody and a permanent change of custody. Defendant obtained counsel and moved for an order to show cause why the child should not be returned to California. A hearing was held on it and the motion for temporary custody, at which defendant also moved the court to transfer the matter to California. The court, John N. O'Brien, J., denied the motion to transfer, denied the motion for temporary custody and ordered Jeremy returned to California pending a full hearing relative to a change of permanent custody. After an extended hearing, the court ordered joint legal custody of Jeremy and Joshua, with physical custody of Jeremy to alternate between the parents annually through the summer of 1981, at which time the court would review the issue of custody upon motion of either party. Defendant appeals. *Held:*

1. The court had jurisdiction because Jeremy and his father had significant connections with this state and there was available here substantial evidence concerning the child's present or future care.

2. A circuit court which has jurisdiction under the Uniform

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 42 Am Jur 2d, Infants § 33.
  Validity, construction, and application of Uniform Child Custody Jurisdiction Act. 96 ALR3d 968.
[2] 20 Am Jur 2d, Courts §§ 173-175.
[3] 24 Am Jur 2d, Divorce and Separation §§ 783, 819.
  42 Am Jur 2d, Infants §§ 43, 57.
[4] 24 Am Jur 2d, Divorce and Separation § 779.

Child Custody Jurisdiction Act to make an initial or modification judgment as to child custody may decline to exercise jurisdiction if the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum. A decision whether or not to decline jurisdiction is discretionary with the circuit court. The court did not abuse its discretion in retaining jurisdiction.

3. The child's best interest is the guiding factor in deciding custody disputes; the court must consider all of the factors specified in the Child Custody Act and shall not change the established custody unless clear and convincing evidence is presented that the change is in the child's best interest. A trial court's determination of custody should be affirmed on appeal unless the judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. The court's findings were not against the great weight of the evidence and do not demonstrate a palpable abuse of discretion.

Affirmed.

1. PARENT AND CHILD — STATUTES — UNIFORM CHILD CUSTODY JURISDICTION ACT.

The Uniform Child Custody Jurisdiction Act is intended, in part: to avoid jurisdictional competition and conflict with the courts of other states; to see that a custody decree or judgment is rendered in the state which can best decide the case in the interest of the child; to assure that child custody litigation ordinarily takes place in the state having the closest connection with the child and his family; and to deter abductions and other unilateral removals of children undertaken to obtain a custody award (MCL 600.651; MSA 27A.651).

2. PARENT AND CHILD — CUSTODY — UNIFORM CHILD CUSTODY JURISDICTION ACT — DISCRETION — STATUTES.

A circuit court which has jurisdiction under the Uniform Child Custody Jurisdiction Act to make an initial or modification judgment as to child custody may decline to exercise jurisdiction if the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum; a decision whether or not to decline jurisdiction is discretionary with the circuit court (MCL 600.657; MSA 27A.657).

3. PARENT AND CHILD — CUSTODY — CHILD CUSTODY ACT — STATUTES — CHANGE OF CUSTODY — BURDEN OF PROOF.

The child's best interest is the guiding factor in deciding custody

disputes; the court must consider all of the factors specified in the Child Custody Act and shall not change the established custody unless clear and convincing evidence is presented that the change is in the child's best interest (MCL 722.23, 722.27[c]; MSA 25.312[3], 25.312[7][c]).

4. APPEAL — PARENT AND CHILD — CUSTODY — CHANGE OF CUSTODY — CHILD CUSTODY ACT — STATUTES — STANDARD OF REVIEW.

A trial court's determination of custody shall be affirmed on appeal unless the judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

*Keller & Avadenka, P.C.,* for plaintiff.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Haney M. Gurwin* and *Denise R. Alexander),* for defendant.

Before: N. J. KAUFMAN, P.J., and CYNAR and J. E. TOWNSEND,* JJ.

CYNAR, J. On November 28, 1979, after lengthy hearings, the trial court entered an order modifying a judgment of divorce with respect to custody and visitation rights concerning the parties' two minor children. The defendant appeals as a matter of right.

A default judgment of divorce was entered in this matter on January 12, 1972, which provided that the defendant-mother have custody of the two minor children, Joshua and Jeremy. Shortly thereafter, in March of 1972, a consent order was entered granting the mother permission to move the minor children to the state of California. By stipulation and order dated September 22, 1978, the custody of the elder son, Joshua, who was 13 years old, was changed to the plaintiff-father.

* Circuit judge, sitting on the Court of Appeals by assignment.

In August of 1979, while 9-year-old Jeremy was in Michigan with the plaintiff for a two-week visit, plaintiff filed a motion in Oakland County Circuit Court for temporary custody and change of custody. The motion for temporary custody was noticed for hearing.

Jeremy was to have returned to California on August 15, 1979. Having been advised that the minor child was not being returned to California as scheduled and that a petition for change of custody was being filed, the mother retained counsel and filed a petition for an order to show cause why the child should not be returned to California.

Both defendant's show cause petition and plaintiff's petition for change of temporary custody were argued on August 17, 1979, before Circuit Court Judge John N. O'Brien. Defendant moved that the court transfer the matter to California under the Uniform Child Custody Jurisdiction Act (MCL 600.651 *et seq.;* MSA 27A.651 *et seq.)* for the reason that Michigan was an inconvenient forum.

After an interview with both Jeremy and Joshua, the court denied plaintiff's motion for temporary custody and Jeremy was ordered to be returned to California to his mother pending a full hearing relative to change of permanent custody. The trial court also refused to transfer jurisdiction to California. Lengthy testimony was taken on October 22, 23, 25, 26, 29 and 30 and the court issued its decision on November 1, 1979. The court ordered that legal custody of the minor children, Jeremy and Joshua, be awarded jointly to the parents, plaintiff and defendant herein. Physical custody of said minor child, Jeremy, was to alternate between plaintiff and defendant. Defendant was to have physical custody of Jeremy, in the State of California, until August 1, 1980. From

August 1, 1980, until the summer of 1981, the physical custody of Jeremy would be in the plaintiff in the State of Michigan. The order for visitation provided that plaintiff was entitled to visitation rights with Jeremy during the 1979 Christmas vacation, and defendant was entitled to visitation rights with Joshua during the 1980 Easter school vacation, to visitation rights with Joshua from July 1, 1980, until August 1, 1980, and to visitation rights with both Jeremy and Joshua during the 1980 Christmas vacation. The court stated that in the summer of 1981, absent an agreement of the parties as to the custodial arrangement, it would again review the matter on petition by either party.

In his motion for temporary custody, plaintiff alleged that defendant permitted Jeremy come into contact with sex-related objects in the custodial home and was often left alone when the defendant went on vacation. Defendant stated that there were two flasher dolls in her home (male and female), which had been given as gag gifts at an adult birthday party for her husband, Mr. Habif. Defendant stated that Jeremy would not have had an occasion to come into contact with these things since they were kept in a closet. Joshua, the older child, viewed these items when he was visiting California in the summer of 1979.

Defendant testified that she and her second husband, Mr. Habif, had vacationed in Tahiti in 1976. They took slides of one another; the defendant was naked from the waist up and Mr. Habif was nude. Defendant stated that these slides were accidentally shown two years later during a family viewing. When this occurred, defendant indicated that she quickly removed the slides from view. Defendant also admitted that she and her husband

smoked marijuana in the privacy of their bedroom. Defendant testified that between 1976 and the date of the hearing she and her husband had taken five to six vacations without the children, the longest lasting two weeks. Defendant testified that she and her husband had taken three vacations with the children during this time, including a trip to Mammoth Mountain, San Diego, and Hawaii.

A question arose as to the effect the change of custody would have on Jeremy as it related to the psychological therapy he was receiving in California. Dr. Noel Lustig, a California psychiatrist not related to the parties, testified on direct examination that Jeremy would have to continue therapy for one more year. On cross-examination, Dr. Lustig stated that he agreed with Les Foreman, the California psychologist who was serving as Jeremy's therapist, that Jeremy would probably be okay in four to six months; however, he believed in overtreating the boy for three to six months to make sure the treatment would hold together. Dr. Fischoff, a Michigan psychiatrist, opined in a deposition that the only treatment Jeremy needed was educational in nature, for his learning disability. Carol Abram, Jeremy's third grade special education teacher, testified by deposition that Jeremy had a learning disability called dyslexia. She indicated that Jeremy had made progress with his problem and that he should be placed back into a normal classroom.

There was an allegation presented regarding some sexual incident having occurred between the brothers prior to their separation, which occurrence was denied by Jeremy. Numerous subissues relating to the respective parties' ability to provide love, affection, guidance and stability for Jeremy were raised throughout the hearing. In addition to

their own testimony, each of the parties offered witnesses to support his or her contentions.

Plaintiff's contention that the defendant did not timely file her appeal in the case at bar is without merit. GCR 1963, 803.1 provides that an appeal to this Court in civil cases must be made not later than 20 days after the entry of a judgment or order from which the party is appealing. Although the trial court's decision to retain jurisdiction was made on October 17, 1979, no order or judgment was entered on this issue. An order dated November 28, 1979, was issued after a full evidentiary hearing regarding a change of custody. Defendant filed her claim of appeal based on this order on December 5, 1979, within the 20-day period required by the court rule.

Defendant contends that the trial court abused its discretion by taking jurisdiction of the custody proceedings. Michigan has adopted the Uniform Child Custody Jurisdiction Act. The Uniform Child Custody Jurisdiction Act is intended in part to avoid jurisdictional competition and conflict with the courts of other states, to see that a custody decree or judgment is rendered in the state which can best decide the case in the interests of the child, to assure that the child custody litigation takes place in the state having the closest connection with the child and his family and to prevent abductions and the unilateral removal of children to obtain a custody award. *McDonald v McDonald,* 74 Mich App 119, 124; 253 NW2d 678 (1977). MCL 600.651; MSA 27A.651.

MCL 600.653; MSA 27A.653 states:

"Sec. 653. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree or judgment if any of the following exist:

"(a) This state is the home state of the child at the time of commencement of the proceeding or had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody for other reasons, and a parent or person acting as parent continues to live in this state.

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least 1 contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

"(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

"(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (a), (b), or (c) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child and it is in the best interest of the child that this court assume jurisdiction.

"(2) Except under subsection (1)(c) and (d), the physical presence in this state of the child or of the child and 1 of the contestants is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(3) Physical presence of the child, while desireable, is not a prerequisite for jurisdiction to determine his custody."

In *McDonald v McDonald, supra,* this Court quoted the remarks of the commissioners in the notes following MCL 600.651(1)(b); MSA 27A.651(1)(b), as follows:

"But *its purpose is to limit jurisdiction rather than to proliferate it.* The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* [emphasis theirs] interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and the family. *There must be maximum rather than minimum contact with the state.* (Emphasis supplied.)" *McDonald, supra,* 126-127.

After a trial court determines that it has jurisdiction to resolve the dispute, it may decline to exercise jurisdiction on the basis that Michigan is an inconvenient forum to resolve the issues presented. MCL 600.657; MSA 27A.657 states in pertinent part:

"Sec. 657. (1) A court which has jurisdiction under sections 651 to 673 to make an initial or modification decree or judgment may decline to exercise its jurisdiction before making a decree or judgment if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(2) A finding of inconvenient forum may be made upon the court's motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(a) If another state is or recently was the child's home state.

"(b) If another state has a closer connection with the child and his family or with the child and 1 or more of the contestants.

"(c) If substantial evidence concerning the child's present or future care, protection, training, and per-

sonal relationships, is more readily available in another state.

"(d) If the parties have agreed on another forum which is no less appropriate..

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 651."

It must first be determined whether the court had jurisdiction to hear the case. In the case at bar, the following factors weigh in favor of the court taking jurisdiction of the case: (1) plaintiff resided in this state; (2) Jeremy was physically present in this state visiting his father at the time of the proceedings; (3) Jeremy had seen Dr. Fischoff, a Michigan psychiatrist, who had made a report about his observations of Jeremy; (4) Jeremy's brother and paternal grandparents reside in Michigan; and (5) Jeremy had expressed a preference to stay in the State of Michigan.

Arguably the aforementioned ties of the parties and their child with the State of Michigan do not constitute maximum contacts with Michigan so as to confer jurisdiction on the Michigan court. California was Jeremy's home state for seven years. Jeremy's mother and maternal grandparents live in California. Medical and school records of the child are located in California. Jeremy's involvement in special educational programs, due to his learning disability, occurred in California.

We conclude that the lower court was authorized to act under MCL 600.653(1)(b); MSA 27A.653(1)(b), because Jeremy and his father have a significant connection with the State of Michigan and there was available in Michigan substantial evidence concerning the child's present or future care. Therefore, the assumption of jurisdiction by the lower court was not reversible error.

Having determined that the Michigan court had jurisdiction to change custody, it must be determined whether the court properly refused to transfer jurisdiction under MCL 600.657; MSA 27A.657. The question of whether to decline jurisdiction under MCL 600.657; MSA 27A.657, the *forum non conveniens* section of the statute, is discretionary with the trial court. *Breneman v Breneman,* 92 Mich App 336, 342; 284 NW2d 804 (1979). In *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959), the Court defined the term "abuse of discretion" as:

"Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Id.,* 384-385.

It should be noted that aside from the factors listed in subsection (3) of the statute, inquiries into what would be convenient to the parties and pose a hardship to the defendant are pertinent in determining the appropriate forum. In the case at bar, all the parties would be inconvenienced no matter what forum was selected to resolve the dispute between the parties. In a proceeding of the nature herein, the parties are inconvenienced greatly even if all the parties are located in the same forum. Past activities of the defendant-mother indicate that long distance travel has been a fre-

quent, rather than a rare, occurrence. As far as cost of the proceeding is concerned, it is noted that the trial court ordered the plaintiff-father to pay substantial attorney fees and costs for the benefit of the defendant-mother. Numerous witnesses were called, either personally or by deposition, in a lengthy court proceeding with each side appearing to have a full opportunity to present its side of the case. The defendant was not prejudiced by litigating the case in this state. The court did not abuse its discretion in retaining jurisdiction of the case.

The Child Custody Act of 1970, specifically, MCL 722.23; MSA 25.312(3), and GCR 1963, 517.1 require that the court make findings of fact as to what custody determination will be in the child's best interests. The trial court made specific findings of fact in support of the custody change.

A child's best interest is the guiding factor in child custody disputes. In determining custody the court must consider all factors specified in MCL 722.23; MSA 25.312(3), which provides:

"Sec. 3. 'Best interests of the child' means the sum total of the following factors to be considered, evaluated and determined by the court:

"(a) The love, affection and other emotional ties existing between the competing parties and the child.

"(b) The capacity and disposition of competing parties to give the child love, affection and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

"(c) The capacity and disposition of competing parties to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

"(d) The length of time the child has lived in a stable,

satisfactory environment and the desirability of maintaining continuity.

"(e) The permanence, as a family unit, of the existing or proposed custodial home.

"(f) The moral fitness of the competing parties.

"(g) The mental and physical health of the competing parties.

"(h) The home, school and community record of the child.

"(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

"(j) Any other factor considered by the court to be relevant to a particular child custody dispute."

The act also provides that, after weighing these factors, the trial court shall not change the established custody of the child unless clear and convincing evidence is presented that the change is in the best interest of the child. MCL 722.27(c); MSA 25.312(7)(c). *Parrott v Parrott,* 53 Mich App 635; 220 NW2d 176 (1974).

In addition, the act provides:

"Sec. 8. To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; MSA 25.312(8).

See also *Schilleman v Schilleman,* 61 Mich App 446; 232 NW2d 737 (1975), *lv den* 395 Mich 769 (1975), *Hilbert v Hilbert,* 57 Mich App 247, 250; 225 NW2d 697 (1974), *Baldwin v Baldwin,* 56 Mich App 489, 494; 224 NW2d 116 (1974), *Feldman v Feldman,* 55 Mich App 147, 148-149; 222 NW2d 2 (1974), *Parrott v Parrott, supra.*

In the case at bar, the court ordered that the parties were to have joint legal custody of Jeremy. A review of the court's findings and the evidence presented is necessary to see whether plaintiff met the burden of proving by clear and convincing evidence that a change of custody was in the best interest of Jeremy. No issue has been raised regarding the joint legal custody of Joshua.

The trial court ordered a change in legal custody of Jeremy from the defendant alone to joint legal custody by the parties. The trial court stated that Jeremy was to finish the 1979-1980 school year in California and then move to Detroit to stay with his father. Jeremy was to go to school in Detroit during the 1980-1981 school year. The court stated that in the summer of 1981 it would review the situation upon the petition of either party. It should be noted that, on December 5, 1979, defendant brought a motion to clarify the court's findings of fact and include in the court's order a statement that it used a clear and convincing evidence test. The trial court indicated that it had used such a test in making its decision.

The court, in its findings of fact, discussed the ten factors enumerated in § 3 of the Child Custody Act in making its custody modification. The court found that the parties could equally provide Jeremy with the factors to be considered in subsections (a) and (b) of the statute. In discussing subsection (c) of the statute, the court found that the parties could equally provide Jeremy with food, clothing and medical or other remedial care. In addition, while the court indicated that Jeremy was progressing and was treated well in a good program for the boy's learning disability, provided through the efforts of the defendant-mother, the court questioned the need for, and type of, psychological therapy received by the boy.

In regard to subsection (d), the court found that the parties were equal. In discussing this factor, the court did not consider the fact that Jeremy's home for seven years had been in California. The reason for this could be that in the past the parties had cooperated in arranging the child's vacations and plaintiff's visits.

In discussing subsections (e), (f), and (g), the court found the parties equal. At least for the purpose of the goal to be achieved herein, to resolve the custody dispute in the best interests of the child, the matters concerned with moral conduct were properly handled by the court. It would serve no purpose to glorify so-called past transgressions in behavior which, hopefully, will not reoccur in the future. The court then went on to discuss subsection (i), regarding the preference of the child. The court stated that, generally, Jeremy's preference was to live in Detroit so he could live with his brother, Joshua. The court also noted that Jeremy would like to live with both parents if he could.

The trial court then went on to discuss other factors relevant to the custody dispute, as per subsection (j) of the statute. Although defendant contends that some of the court's observations were improper and not based upon direct evidence at trial, the court considered factors relevant to the particular dispute as well as recognizing and being sensitive to the attachment of Jeremy to his brother. This factor was certainly a relevant circumstance to be considered by the court. The court's recommendation to the defendant that she seek a new therapist indicates that the court did not give the expert's testimony the same weight as the defendant contended should be given thereto. Other factors discussed by the court, such as a

quarrel between the parties and an incident with the orthodontist, were not totally outside of the record. Although perhaps not pertinent in determining custody, the court's discussion of these facts indicates that the court was aware of the litigants' relationship.

The court's findings were in most respects proper and supported by the record. The record reveals that a change of circumstances had occurred since custody was originally granted to the defendant. Joshua, Jeremy's brother, had moved to Detroit and was living with his father. Jeremy's preference to be with his brother and the reasonableness of this preference was not only the main issue at trial, but was the main circumstance considered by the court. In light of these facts, the court's determination to modify custody was based on clear and convincing evidence.

As previously indicated, the court ordered that absent a prior agreement by the parties, the court would review the issue of custody and visitation in the summer of 1981 upon the petition of either party. Notwithstanding, it should be noted that either party has a right to petition for a change under MCL 722.27(c); MSA 25.312(7)(c) upon proper cause shown or because of change of circumstances.

While the court must consider all the factors specified in MCL 722.23; MSA 25.312(3) in deciding what is in the best interests of the child, such determination is much more difficult than merely tallying runs, hits, and errors in box score fashion following a baseball game. Interpreting hits, runs and errors in the battle of life is much more complex. The trial court during this proceeding had an opportunity to see and hear the witnesses, to observe their demeanor, attitudes and reactions,

as well as to weigh the evidence and determine credibility. The findings of fact fully support the court's determination. Additionally, seasoned judicial judgment, while not always spelled out in precise, appropriate words or punctuation marks, often speaks clearly and loudly through the result reached.

The trial judge did not make findings against the great weight of the evidence and did not palpably abuse his discretion. There was clear and convincing evidence to support the determination of the lower court.

Affirmed with costs to the plaintiff.