BOLT v BOLT

Docket No. 53261. Submitted December 3, 1981, at Detroit.—Decided February 17, 1982.

Ora Irene Bolt sought a divorce from Jack Bolt in Wayne Circuit Court. Harry J. Dingeman, J., found that defendant's interest in his individual account pension plan was not a marital asset on the basis that the interest in such plan was either contingent or that the value of the interest was not ascertainable because of the possibility that the value of defendant's interest might decline. Plaintiff appeals from the property settlement portion of the judgment of divorce, claiming that defendant's pension interest was a marital asset and that the trial court abused its discretion in dividing the marital property. *Held:*

1. The fact that a pension fund might not be solvent at the time the employee wishes to draw amounts from the fund does not create per se a contingency which eliminates consideration of such pension interests as a marital asset. Rather, any vested interest in a pension fund which is readily ascertainable at the time of divorce is presumptively considered to be a marital asset, subject to proof by the party with the vested interest showing that, because of the speculative nature of the plan or a problem with the plan's solvency, it is unlikely that pension benefits will be received from the plan.

2. Since his vested interest in the pension plan is unavailable to defendant unless his employment is terminated by his quitting, his discharge, his retirement or his death, and since it would be unfair to require him to quit his employment to secure such pension interests at their present value, the value of the vested pension interests, for the purpose of determining the distribution of marital assets, should be reduced upon proofs by defendant that he intends to continue his employ-

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 24 Am Jur 2d, Divorce and Separation § 632.
Pension of husband as resource which court may consider in determining amount of alimony. 22 ALR2d 1421.
[5] 5 Am Jur 2d, Appeal and Error § 868.
24 Am Jur 2d, Divorce and Separation § 925.
[6] 24 Am Jur 2d, Divorce and Separation § 933.

ment until retirement and that the value of his pension interests at retirement is likely to be less than the current value.

3. The trial court's division of the remaining property was fair, however, it is unclear from the trial court's opinion whether the trial court used the market value of the plaintiff's shares of stock at the time of the divorce rather than the purchase price of those shares. On remand, the trial court should clarify which value was used and should consider modifying the property settlement if the purchase price rather than the market value was used.

Remanded.

1. DIVORCE — MARITAL ASSETS — PENSIONS.

The contingent possibility that a pension plan may not be solvent at the time an employee wishes to draw funds from the plan does not eliminate per se the consideration of such pension interests as a marital asset for the purpose of the distribution of assets in a divorce.

2. DIVORCE — MARITAL ASSETS — PENSIONS.

A vested interest in a pension plan, to the extent that the value of said plan is readily ascertainable at the time of divorce, is to be presumptively considered to be a marital asset subject to distribution as a part of a judgment of divorce; however, if the party with the vested interest in the pension plan can show that, because of the speculative nature or questionable solvency of the pension plan, it is unlikely that benefits will be received from the plan, a court may decline to consider such vested pension benefits as a marital asset.

3. DIVORCE — MARITAL ASSETS — PENSIONS.

The value of an individual account pension plan, for the purpose of distribution of the marital assets in a divorce, is determined by multiplying the value of the account on the accounting date immediately preceeding the divorce by the percentage of such account that is vested.

4. DIVORCE — MARITAL ASSETS — PENSIONS.

The value of vested interests in an individual account pension plan for the purpose of determining marital assets in a divorce, to the extent that such pension interests are unavailable absent the termination of the employment of the person having such interest, should be reduced if it is shown that the person holding such interests intends to continue such employment until retirement and, upon retirement, it is likely that the

present value of such interests overstates the value of those interests upon retirement.

5. Appeal — Divorce — Property Division.
    The property settlement ordered by the trial court in a divorce case will not be modified on appeal unless the Court of Appeals is convinced that it would have reached a different result.

6. Divorce — Property Division.
    The division of property in a divorce case need not be mathematically equal to be deemed fair.

*Gregory Fisher Lord,* for plaintiff.

*Michael J. Trager,* for defendant.

Before: Danhof, C. J., and Bronson and J. H. Gillis, JJ.

Bronson, J. The parties were divorced on August 1, 1980, following a trial in the Wayne County Circuit Court. All claims on appeal center on the division of the marital assets. Because of unresolved issues concerning whether defendant's interest in a pension plan established by his employer, Daniel International Corporation, should be considered a marital asset, this matter must be remanded for further consideration.

The trial court specifically found that the pension plan in issue did not constitute a distributable marital asset. In reaching this conclusion, the court relied on *Miller v Miller,* 83 Mich App 672; 269 NW2d 264 (1978). The court apparently believed that, because it was possible for the value of defendant's retirement account to decline, his pension interests were either contingent or their value was not readily ascertainable.

At this point, it is necessary to examine the details of defendant's retirement plan. As a benefit of employment, Daniel International contributes

funds on an annual basis, as profits allow, into a pension fund. Each employee has established for him an individual company account representing some proportion of the entire pension fund. The company invests the monies in the pension fund and, depending on the success or lack thereof of these investments, each covered employee's account may experience an annual net increase or decrease in value. In the fiscal years 1974 through 1979, Daniel International's profit-sharing pension fund has increased in value in each year except 1974. Under the plan, 10% of the employee's account balance vests for each year of employment. Since defendant had been with the company seven years at the time of trial, his interest in his individual account plan was 70% vested. As of December 31, 1979, defendant's account was valued at $11,941.40, of which $8,358.98 was fully vested. Due to the profit-sharing aspect of the plan, an account balance is only rendered at the end of each year. Under the Employment Retirement Income Security Act (ERISA), 29 USC 1002 *et seq.,* defendant's pension fund is an "individual account plan". 29 USC 1002(34).

The specific questions which we must resolve are whether, under the *Miller* decision, defendant's pension plan is subject to contingencies such that it should not be deemed a distributable marital asset and whether the plan has a reasonably ascertainable value. We will address these issues in turn.

An individual account plan, like a defined benefit plan, may be safe or risky depending on the specifics of the fund's structure and investment policies. Every pension plan is subject to the contingency that the plan be solvent at the time the employee wishes to draw amounts from the pen-

sion fund. This sort of contingency, however, is not such that it per se eliminates consideration of the pension interests as a marital asset. In *Miller,* when we spoke of interest subject to contingencies, we were referring to pension plans that were not vested, *i.e.,* a plan that could be unilaterally terminated by the employer, a plan subject to the employee's employment for a specific number of years not yet attained, or the like. We were not concerned with the solvency risk virtually every employee with a pension plan must live with. In our opinion, once a party in a divorce action establishes that the other party has a vested interest in a pension plan, to the extent that the value of said plan is readily ascertainable at the time of the divorce, it is to be presumptively considered a marital asset.[1] However, if the party with the vested interests can show that (due to the speculative nature of the plan, problems with the plan's solvency, or the like) a high probability exists that the working party will never receive any pension benefits from the plan, the trial court may decline to consider the pension interests as a marital asset.[2] In this case, no record evidence suggests

[1] This does not include certain retirement pensions granted under federal law. In *McCarty v McCarty,* — US —; 101 S Ct 2728; 69 L Ed 2d 589 (1981), the Supreme Court held that military retirement benefits were personal and could not be reached through legal process by the states, including distribution as marital assets. See also *Kendall v Kendall,* 106 Mich App 240; 307 NW2d 457 (1981), involving railroad retirement benefits, and reaching a result similar to *McCarty.*

[2] This assumes that the pension plan is of the noncontributory variety. That is, all contributions to the pension plan are made by the employer. If, however, the pension plan is conditioned on voluntary employee contributions, the pension interests must be considered a marital asset. Defendant, by paying into the pension fund some portion of his wages, would have voluntarily elected to divert monies which would otherwise have been available for use during the marriage. As such, it is not unfair to consider the pension interests at their present value in dividing the property, just as any other asset which has appreciated or depreciated in value would be treated.

that defendant's individual account plan is likely to disappear before he attempts to draw from it. However, since the foregoing constitutes a refinement of *Miller,* we remand to allow additional evidence to be submitted. On remand, defendant, at his option, may present evidence tending to show that, despite the fact that he has a vested interest in his retirement account, it is likely that the entire plan will be defunct by the time he has an opportunity to draw from it.

We now turn to the question of whether defendant's individual account plan has a reasonably ascertainable value. As noted above, the present value of each retirement account is determined on December 31st of each year. The divorce proceedings below were terminated by a judgment of divorce entered on August 1, 1980. In our opinion, the present value of defendant's account can be ascertained by taking 70% of its value on December 31, 1979. (The 70% figure is to account for the fact that defendant's interests are not fully vested.)

Although we find that at the time the divorce judgment was entered defendant's individual account plan had a readily ascertainable present value, additional facts may require a further refinement of the rule from *Miller.* It appears from the record before us that defendant cannot decide to "opt out" of the pension plan and receive that amount representing the vested value of his interests while continuing to work for his current employer. Rather, defendant must either quit, be discharged, retire, or die before he, or his estate, receives any benefits from the pension plan. Under these circumstances, it could be unfair to defendant to have his pension benefits valued at their current present value when, in fact, only by dying

or terminating his employment could he obtain this value. If, on remand, it does, in fact, become clear that defendant can only derive his pension benefits upon the termination of his employment (or his estate upon death), defendant must be given an opportunity to establish that he intends to continue with his employer until retirement and that, although he is likely to have funds in his pension account at his retirement, the value of the account is likely to be less than the present value suggests. Assuming that the present value does overstate defendant's pension interests, had the parties remained married, plaintiff's standard of living would have been affected by the declining value of defendant's retirement account. We do not believe it is reasonable to require defendant to quit his job in order to obtain the present value of his retirement benefits or, alternatively, to require distribution as a marital asset amounts which defendant can reasonably demonstrate overvalues the worth of his individual retirement account in reference to his likely future retirement date.[3]

Plaintiff also asserts that the trial court abused its discretion in dividing the marital property. A trial court's property settlement will not be modified unless, upon review, this Court is convinced that it would have reached a different result. *Evans v Evans,* 98 Mich App 328, 329; 296 NW2d 248 (1980). Exclusive of the problem of whether defendant's pension plan should have been considered a marital asset, we note that the court's division of assets and liabilities between the two parties was approximately equal. To the extent that the court deviated from a 50-50 split of assets and liabilities, we are not convinced that such

---

[3] Again, this assumes a noncontributory retirement plan. If the plan is of the contributory variety, fn 2, *supra,* would be applicable.

imbalance merits adjustment by this Court. A division of property need not be mathematically equal to be deemed fair. *Zamfir v Zamfir,* 92 Mich App 170, 173; 284 NW2d 517 (1979). However, if, on remand, the trial court determines that defendant's pension interests should have been included in the marital estate, the court shall modify the property settlement to reflect this change of conditions.

While we find no error as such based on the percentage of property awarded to each party, it is unclear from the trial court's opinion whether plaintiff's stock was evaluated at its purchase price instead of its market value at the time of trial. On remand, the trial court should clarify which value was used, and, if the purchase price was used, the court should then consider modifying the property settlement to reflect the change in the monetary value of plaintiff's share of the marital estate resulting from the use of the market value of the stock.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.