STREICHER v STREICHER

Docket No. 69004. Submitted May 20, 1983, at Houghton.—Decided August 2, 1983.

Plaintiff, Charles W. Streicher, and defendant, Elaine M. Streicher, were divorced by a judgment of the Houghton Circuit Court, Stephen D. Condon, J., and physical custody of the parties' minor children was awarded to defendant. Plaintiff appeals, contending that the granting of physical custody of the parties' children to defendant was against the great weight of the evidence. *Held:*

1. The trial court's conclusion that plaintiff and defendant are equal in respect to their mental health, one of the eleven factors to be considered by a court in determining the best interests of a child, is contrary to the great weight of evidence.

2. The trial court granted joint custody of the children to the parties but then granted actual physical custody of the children to defendant. The court made no findings whatsoever as to why it did so. The trial court's award of physical custody to the defendant as being in the best interest of the children was against the great weight of evidence. The award of physical custody to the defendant is reversed and physical custody is awarded to plaintiff. The order for support and maintenance of the minor children in the judgment of divorce is no longer in effect.

3. The trial court did not err or abuse its discretion by its division of the marital assets and liabilities of the parties. However, the change in physical custody of the children necessitates a change in the possession of exclusive occupancy of the marital home. The right to the exclusive occupancy of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 136.

[2] 24 Am Jur 2d, Divorce and Separation § 783.

59 Am Jur 2d, Parent and Child § 25.

"Split," "divided," or "alternate" custody of children. 92 ALR2d 695.

[3] 4 Am Jur 2d, Appeal and Error § 135.

24 Am Jur 2d, Divorce and Separation § 337.

[4] 24 Am Jur 2d, Divorce and Separation § 933.

home is granted to plaintiff. The case is remanded for appropriate amendment of the property settlement provision in the judgment of divorce concerned with the exclusive occupancy of the home and disposition of the household furniture, kitchen utensils, dishes, bedding and other items owned by the parties and used by them to maintain a home for the children.

Reversed and remanded.

1. Parent and Child — Child Custody — Appeal.

Review of child custody cases by the Court of Appeals is *de novo;* however, such review is limited by the statute which provides that all orders and judgments of the circuit court concerning custody of a child shall be affirmed on appeal unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or made a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

2. Parent and Child — Child Custody — Child Custody Act — Best Interests of Child.

The child's best interest is the guiding factor in deciding custody disputes; "best interests of the child" is determined by applying the factors set forth in the Child Custody Act, which are to be considered, evaluated, and determined by the court (MCL 722.25; MSA 25.312[5]).

3. Divorce — Property Settlements — Appeal.

A trial court in an action for divorce has wide discretion in adjusting the rights of the parties in the marital property, and the Court of Appeals will not reverse a property award unless it is convinced that it would have reached a different result had it occupied the trial court's position; the division of property need not be equal, so long as it is fair.

4. Divorce — Property Settlements.

Factors to be considered in dividing marital property are the source of the property, the contribution toward its acquisition, the length of the marriage, needs of the parties, and the earning abilities of the parties.

*Garfield W. Hood,* for plaintiff.

*J. B. Jenkins,* for defendant.

*Richard S. Murray,* Houghton County Prosecut-

ing Attorney, for the minor Streicher children, appellees.

Before: CYNAR, P.J., and J. H. GILLIS and WAHLS, JJ.

PER CURIAM. Following a bench trial brought on to be heard on the complaint and counterclaim, a divorce was granted to defendant on the counterclaim. The trial judge entered an order staying its judgment of divorce and the various responsibilities and obligations of the parties thereunder except as to the dissolution of the marriage, pending completion of this appeal. Plaintiff's motion for relief from judgment or alternatively granting a new trial was denied. Plaintiff appeals as of right the trial court's award of physical custody of the children to the defendant and the property provisions in the judgment of divorce.

Plaintiff contends the granting of physical custody of the parties' children to defendant was against the great weight of the evidence. We agree.

The parties were married on June 15, 1963. The five children born to the parties are Diana, age 17; Laura, age 16; Sarah, age 14; Penelope, age 12; and Samantha, age 9.

Plaintiff is an engineering graduate, earns the sum of $29,550 per year and nets $21,400 or approximately $412 per week. Defendant has not worked full time since before her marriage and has no steady income source. She is a second year student at Suomi College in Hancock.

This Court reviews child custody cases *de novo. DeGrow v DeGrow,* 112 Mich App 260, 265; 315 NW2d 915 (1982). However, such review is limited by MCL 722.28; MSA 25.312(8), which provides that all orders and judgments of the circuit court

concerning custody of a child shall be affirmed on appeal unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or made a clear legal error on a major issue, *DeGrow, supra.*

When there is a dispute between parents as to who should have custody of their children, the best interest of the children shall control. MCL 722.25; MSA 25.312(5). What constitutes the best interest of the children is discussed in MCL 722.23; MSA 25.312(3). Under § 3, "best interests of the child" means the sum total of factors (a) through (k) to be considered, evaluated, and determined by the court.

The trial court's findings as to each of the 11 factors are reviewed in light of the testimony taken at trial to determine whether the court's conclusions were against the great weight of evidence.

Section 3(a). The love, affection, and other emotional ties existing between the parties involved and the children. The trial court's complete findings of fact as to this factor were stated as follows: "I find this to be equal between the competing parties and the children." Plaintiff contends that the testimony presented at trial showed that plaintiff's relationship with his children was characterized by respect, warmth, love, and affection, while the emotional ties existing between defendant and the children were characterized by bickering, physical and verbal fighting between them, and fear of defendant on the part of the children.

Defendant argues that the testimony that the children were warm, friendly, courteous, etc., is reflective of defendant's love for and care of the children.

Both plaintiff and defendant testified that defen-

dant had love and affection for the children. Both also testified to the fact that it was defendant who cared for the day to day needs of the children and shopped with them.

While we may have reached a different conclusion than the trial court regarding factor 3(a), it cannot be said the trial court's finding was against the great weight of the evidence.

Section 3(b). The capacity of the parties to give the children love, affection, guidance, and education and raising of the children in their religion or creed, if any. The trial court's total findings of fact on this factor were stated as follows: "I find the mother to have the greater capacity to give the children the love and the affection and the guidance, together with the ability to provide proper education and religious training." The trial court's conclusion on factor 3(b) was not against the great weight of the evidence.

Section 3(c). The capacity and disposition of the parties involved to provide the children with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs. The trial court's total findings of fact as to this factor were stated as follows: "I find this to be predominately in favor of the father because of his income earning ability." The parties do not contest this finding.

Section 3(d). The length of time the children have lived in a stable, satisfactory environment, and desirability of maintaining continuity. As to this factor the trial court stated: "I find that the children are presently living in a stable, satisfactory environment with both parents, and that there is a necessity and desirability of maintaining this continuity."

While the testimony at trial gave some indication that defendant on occasion was excessively violent with the children, and, at times, displayed somewhat bizarre behavior, the trial court could infer from the testimony relating to the children's behavior, appearance, and academic performance that they resided in a stable, satisfactory environment. Therefore, the conclusion of the trial court as to this factor was not against the great weight of the evidence.

Section 3(e). The permanence, as a family unit, of the existing or proposed custodial home or homes. The trial court's total findings as to this factor were stated as follows: "I find that there is a permanence of the family unit of the existing custodial home of the parties." There was no testimony or other evidence presented at trial relating directly to the effects of placing the children with either plaintiff or defendant on the permanence, as a family unit, of the resultant custodial home. The court made no findings whatsoever as to the permanence, as a family unit, of the custodial homes proposed by the parties.

Section 3(f). The moral fitness of the parties involved. The trial court stated its findings of fact on factor (f) and factor (g) in a single sentence: "I find that the moral fitness, the mental and physical health of the parties to be equal."

Section 3(g). The mental and physical health of the parties involved. The trial court's total findings of fact as to this factor is stated above. Plaintiff vigorously contests the trial court's finding that plaintiff and defendant are equal in respect to their mental health.

Defendant in no way challenged the mental health of plaintiff. As to the mental health of defendant, there was a large amount of testimony

from various witnesses that defendant had problems in this area. Plaintiff testified that defendant began to develop emotional problems, evidenced by erratic and irrational behavior, in 1972. Plaintiff then described a number of events occurring during the period from 1974 through 1976 evidencing defendant's alleged erratic behavior. This testimony is summarized as follows:

1. After an argument during the summer of 1974, defendant left the house in a rage, and, after she failed to return, plaintiff summoned their minister for assistance. Plaintiff and the minister found all of defendant's clothing strewn through a field near their home. Defendant returned home later totally naked, went into her room and got dressed, and left the house. Plaintiff did not hear from her again until the next morning.

2. During the spring of 1974, plaintiff and the children were playing at their home. Defendant walked into the room and, without provocation or explanation, slapped plaintiff in the face.

3. In the winter of 1975, during a family discussion, plaintiff mimicked defendant. Defendant then flew into a sudden rage, went into the kitchen and got out a pistol.

4. During the summer of 1975, plaintiff received a frantic phone call from defendant at his place of work, in which defendant stated, "I have killed Penny." Plaintiff raced home, found no one there, and ultimately found defendant and daughter Penny in town. Defendant provided no explanation for the phone call.

5. During 1976, defendant left plaintiff and the children following an argument, failed to return home all night, and upon discovering the next day that plaintiff had taken the children to work in light of the fact that there was no one at home to

care for them, threatened plaintiff with legal action for removing the children from the home without her permission.

6. During the summer of 1976, after the parties had gone to bed, defendant asked plaintiff to get her aspirin and a cup of water because she had a headache. Upon his return to the bedroom with the requested items, defendant threw the cup of water at plaintiff without warning or explanation.

Plaintiff also described a number of events demonstrating defendant's emotional instability occurring within the last two years. This testimony included, for example, the "working over" of one of the daughters by defendant, resulting in the daughter's believing that her nose had been broken; defendant spitting in plaintiff's face after one argument; and, during May of 1982, plaintiff returning home from a trip to find that one of the daughters had a cut lip as a result of being slapped by defendant and that two other daughters had been slapped around by defendant during the day, defendant having accused one of them of being possessed by demons.

Plaintiff also testified that defendant had stated a number of times that she believed witchcraft to be affecting plaintiff and other things in their home.

On direct examination, defendant did not deny any of the above described testimony.

Other witnesses for the plaintiff related incidents tending to show defendant's emotional instability and state of mental health. Except for the denial of one incident, defendant did not refute the testimony of these witnesses. Defendant also testified on direct examination that her fighting with plaintiff was partially caused by sinus headaches

effected by weather conditions. In response to a question about her alleged high level of anxiety, defendant stated that this was caused by, *inter alia,* anxieties resulting from the divorce process and anxieties resulting from having five children.

The trial court's conclusion that plaintiff and defendant are equal in respect to their mental health is contrary to the great weight of evidence.

Section 3(h). The home, school, and community records of the children. The trial court's complete findings of fact as to this factor were stated as follows: "I find the home, school and community records of the children to be—and present environment to be excellent." Neither party seriously contests this finding.

Section 3(i). The reasonable preferences of the children, if the court deems the children to be of sufficient age to express preference. Initially the trial court ruled on the matter of custody without interviewing the children. This resulted from an understanding by the court that factor 3(i) was waived by both parties. Subsequently, the trial court recognized that factor 3(i) was not waived and each child was interviewed. The court found each of the children to be of sufficient age and intelligence to express a reasonable preference and then stated that all of the minor children desired to live with plaintiff. As to factor 3(j), the trial court found: "I find that there is an equal willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between themselves and their parents [sic]."

Section 3(k). Any other factor considered by the court to be relevant to a particular child custody dispute. The trial court made no findings whatsoever as to this final factor.

At the conclusion of the trial, the court made a minimal recitation of fact, stating:

"A review of the guidelines in proper perspective with the background facts and circumstances in this case the court finds is equal between the parties and warrants a finding that the parties be granted the joint custody of the minor children. Defendant shall have the actual physical custody of said children, with liberal and reasonable rights of visitation granted to the plaintiff."

The trial court made no findings whatsoever as to why, after granting joint custody of the minor children to the parties, it granted actual physical custody of the children to defendant.

As to the weight to be given to the factors under § 3 of the Child Custody Act, this Court, in *Lustig v Lustig,* 99 Mich App 716, 731; 299 NW2d 375 (1980), stated:

"While the court must consider all the factors specified in MCL 722.23; MSA 25.312(3) in deciding what is in the best interests of the child, such determination is much more difficult than merely tallying runs, hits, and errors in box score fashion following a baseball game. Interpreting hits, runs and errors in the battle of life is much more complex."

We take note of the words of caution in *Lustig,* in evaluating what is in the best interest of the child. After reviewing the record, we believe the court did not err in awarding joint custody to the divorcing couple. There is no dispute as to the joint custody award. As to the placing of the children in the actual physical custody of defendant, the trial court's opinion in determining factor 3(g), the mental and physical health of the parties involved, to be equal was against the great weight of the

evidence. In addition, while the court might exercise discretion in giving weight to the preference of the children, *Lustig, supra,* the preference of the children in favoring the plaintiff could not be totally disregarded. We conclude that the trial court's award of physical custody to the defendant as being in the best interest of the children was against the great weight of the evidence. The award of physical custody to the defendant is reversed and physical custody is awarded to the plaintiff. Further, while pursuant to this determination, the support and maintenance of the minor children continues to be the responsibility of the plaintiff, the order for support and maintenance of minor children in the judgment of divorce is no longer in effect.

Plaintiff contends that the trial court's division of the marital assets and liabilities of the parties was erroneous and an abuse of discretion even upon the award of physical custody to defendant. We disagree.

Although this Court reviews divorce cases *de novo,* it will not substitute its judgment for that of the trial court absent an abuse of discretion. *Moffat v Moffat,* 105 Mich App 436; 307 NW2d 337 (1980). The trial court's property settlement will not be modified unless, on review, this Court is convinced it would have reached a different result. *Bolt v Bolt,* 113 Mich App 298; 317 NW2d 601 (1982). The property division must be fair, but it need not be mathematically equal, and the trial court is given wide discretion. *Bolt, supra; Smith v Smith,* 113 Mich App 148; 317 NW2d 324 (1982). Factors to be considered in dividing marital property are the source of the property, the contribution towards its acquisition, the length of the marriage, needs of the parties, and the earning

abilities of the parties. *McCallister v McCallister,* 101 Mich App 543; 300 NW2d 629 (1980).

Our change of physical custody of the minor children necessitates a change in the possession of exclusive occupancy in the home described as 306 First Street, Houghton, Michigan. The right to the exclusive occupancy of said home is henceforth in the plaintiff, and we so rule. Accordingly, we remand this matter to the lower court for appropriate amendment of the property settlement provision in the judgment of divorce concerned with the exclusive occupancy of the home and disposition of the household furniture, kitchen utensils, dishes, bedding and other items owned by the parties and used by them to maintain a home for their children.

Reversed and remanded in accordance with this opinion. We do not retain further jurisdiction.