DeGROW v DeGROW

Docket No. 56663. Submitted October 13, 1981, at Lansing.—Decided
    January 6, 1982.

    Plaintiff, Terry L. DeGrow, and defendant, David J. DeGrow,
        were divorced and custody of their two minor children was
        granted to plaintiff by order of Midland Circuit Court in 1978.
        In April 1979, plaintiff filed a petition for change of domicile.
        Defendant immediately filed a petition for change of custody.
        Both petitions were denied. Defendant was thereafter given
        custody of the children by *ex parte* order of the court following
        a child abuse investigation. Plaintiff then remarried and filed a
        petition for a change of domicile necessitated by her new
        husband's transfer of employment. Defendant filed another
        change of custody petition. Plaintiff's petition was approved,
        defendant's denied, David S. DeWitt, J. Defendant appeals.
        *Held:*

        1. The trial court properly placed the burden on defendant to
    prove by clear and convincing evidence that the best interests
    of the children required that the custody order be modified.

        2. It cannot be said, after a *de novo* review of the statutory
    factors to be considered in determining the best interests of a
    child, that the finding of the trial court was against the great
    weight of evidence, as defendant contends.

        3. In order to encourage stability in custody cases and serve

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 7, 9, 10] 24 Am Jur 2d, Divorce and Separation § 812.
    42 Am Jur 2d, Infants §§ 43, 57.
[2] 4 Am Jur 2d, Appeal and Error § 136.
    24 Am Jur 2d, Divorce and Separation §§ 779, 791.
[3] 42 Am Jur 2d, Infants §§ 43, 48, 52, 53.
[4] 24 Am Jur 2d, Divorce and Separation § 796.
    42 Am Jur 2d, Infants § 52.
    Nonresidence as affecting one's right to custody of child. 15 ALR2d
        432.
[5, 8] 24 Am Jur 2d, Divorce and Separation § 820.
    42 Am Jur 2d, Infants § 43.
[8] 24 Am Jur 2d, Divorce and Separation § 784.
    42 Am Jur 2d, Infants § 44.
    Child's wishes as factor in awarding custody. 4 ALR3d 1396.

the best interests of the child, the Court of Appeals must refrain from reversing the decision absent clear error of law. There is no ground to upset the decision.

Affirmed.

BASHARA, P.J., dissented. He would hold that the trial court erred in assuming that since custody had been awarded to plaintiff, an "established custodial environment" must be presumed. If no established custodial environment is found to exist, a motion for change of custody is to be considered on a mere preponderance of the evidence standard. In his opinion, the great weight of the evidence defied a finding that an established custodial environment existed in plaintiff. He would also find that the trial court erred in holding that the best interests of the children were served by denying the modification petition. He would reverse and remand for entry of an order in defendant's favor.

### OPINION OF THE COURT

1. PARENT AND CHILD — CHILD CUSTODY — CHANGE OF CUSTODY.

   A trial court is prohibited from changing a child custody order where an established custodial environment exists unless clear and convincing evidence demonstrates that the change in custody would be in the child's best interest (MCL 722.27; MSA 25.312[7]).

2. PARENT AND CHILD — CHILD CUSTODY — APPEAL.

   Review of child custody cases by the Court of Appeals is *de novo;* however, to ensure stability and finality in the resolution of child custody matters, all orders and judgments of the trial court must be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

3. WORDS AND PHRASES — CUSTODIAL ENVIRONMENT.

   An "established custodial environment" under the Child Custody Act depends on a custodial relationship of a significant duration in which the child is provided the parental care, discipline, love, guidance, and attention appropriate to his age and individual needs, and a relationship between the custodian and child which is marked by qualities of security, stability, and permanence (MCL 722.27; MSA 25.312[7]).

4. PARENT AND CHILD — CHILD CUSTODY — DOMICILE OF CUSTODIAL PARENT.

   Geographical restrictions on the domicile of a custodial parent

are not realistic; there is no presumption that bringing up a child in one state has any advantage over another.

5. PARENT AND CHILD — CHILD CUSTODY ACT — BEST INTERESTS OF CHILD.

   The Child Custody Act lists 10 factors a trial judge must weigh in custody cases when evaluating how to serve the best interests of the child (MCL 722.23; MSA 25.312[3]).

6. PARENT AND CHILD — CHILD CUSTODY ACT — CHANGE OF CUSTODY.

   The Legislature, in enacting the Child Custody Act, sought to spare children from the detrimental effects of constantly being shuffled between parents involved in ongoing custody battles; in furtherance of this policy the Legislature required "clear and convincing" evidence to support change of child custody petitions (MCL 722.21 *et seq.;* MSA 25.312[1] *et seq.).*

7. PARENT AND CHILD — CHILD CUSTODY ACT — CHANGE IN CUSTODY.

   A change in child custody is not to be easily facilitated absent those cases where the factors clearly dictate the best interests of the child will be served by a switch in custody; a reviewing court should rigidly adhere to the "clear and convincing" evidence standard set forth in the Child Custody Act and overturn a decision only when a different outcome is mandated by the great weight of evidence (MCL 722.28; MSA 25.312[8]).

8. PARENT AND CHILD — CHILD CUSTODY — PREFERENCE OF CHILD.

   A child's expressed preference to live with one parent rather than the other does not automatically outweigh the other evidence in a child custody matter; rather, it is but one element to evaluate in determining the best interests of the child (MCL 722.23; MSA 25.312[3]).

DISSENT BY BASHARA, P.J.

9. PARENT AND CHILD — CHILD CUSTODY ACT — MODIFICATION OF CUSTODY ORDERS.

   *The first point of inquiry in resolving disputes over modification of child custody orders is whether an "established custodial environment" exists; if the trial court determines that such a relationship exists, based upon the criteria in the Child Custody Act, it may modify the custody order only upon a showing of clear and convincing evidence that a change would be in the best interests of the child; if no "established custodial environment" is found to exist, the motion for modification should be considered on a mere preponderance of the evidence standard (MCL 722.23, 722.27[c]; MSA 25.312[3], 25.312[7][c]).*

10. Parent and Child — Child Custody — Modification of Custody Order — Preponderance of Evidence.

> *A motion for modification of a child custody order should be considered on a mere preponderance of the evidence standard where no "established custodial environment" is found to exist; mere possession of custody by the other party should not raise the movant's burden to the clear and convincing evidence standard.*

*Bower & Rogers,* for plaintiff.

*Sinclair, Clulo & McCormick,* for defendant.

Before: Bashara, P.J., and R. B. Burns and V. J. Brennan, JJ.

R. B. Burns, J. The parties were divorced on October 13, 1978. Custody of the two minor children was granted to the plaintiff mother with the defendant father receiving reasonable visitation rights.

In April, 1979, plaintiff filed a motion for a change of domicile. Immediately after plaintiff filed the motion, defendant submitted a petition to change custody. The court denied both petitions.

On August 20, 1980, pursuant to his visitation rights, defendant was spending time with his children. He noticed a bruise on his son's ribs. The bruise was in the form of a handprint. The defendant suspected that the bruise resulted from an incident of child abuse. The incident was referred to the Protective Services Division of the Department of Social Services, which conducted an investigation into the matter. Although the investigation determined that child abuse had occurred, the case was not pursued further since the perpetrator of the bruise remained unidentified and it was an isolated incident.

Upon the conclusion of the investigation, defendant petitioned for a change of custody. On Octo-

ber 16, 1980, an *ex parte* order was issued, giving defendant custody of the children. On December 1, 1980, defendant moved for leave to withdraw the petition. The motion was granted, without prejudice. Shortly thereafter, plaintiff remarried and filed a petition for a change in domicile to the State of Ohio, necessitated by a relocation in her present husband's place of employment. Defendant responded by filing another petition for a change of custody. The plaintiff's petition was approved; defendant's petition to change custody was denied.

A trial court is prohibited from changing a custody order where an established custodial environment exists unless clear and convincing evidence demonstrates that the change in custody would be in the child's best interest. MCL 722.27; MSA 25.312(7) provides in part:

"722.27. Custody, support and visitation; awards, judgments, orders; modifications, amendments; community resources; guardian ad litem; counsel

"Sec. 7. If a child custody dispute has been submitted to a circuit court as an original action under this act or has arisen incidentally from another action in a circuit court or another judgment of a circuit court, for the best interests of the child the court may:

* * *

"(c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."

Defendant argues that the court erroneously held him to the "clear and convincing" standard where plaintiff's petition to change domicile de-

stroyed the children's established custodial environment.

Defendant further asserts that even if this Court finds a custodial environment to exist, his petition below for a change of custody was supported by "clear and convincing evidence", as required by MCL 722.27(c); MSA 25.312(7)(c), and that the findings made by the trial judge, which led to the denial of the petition to change custody, were against the great weight of evidence, thereby mandating a reversal of the decision.

This Court has the power of *de novo* review of child custody cases. *Bahr v Bahr,* 60 Mich App 354; 230 NW2d 430 (1975). However, to ensure stability and finality in the resolution of child custody matters, MCL 722.28; MSA 25.312(8) provides:

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue."

The first issue which must be decided is whether an established custodial environment continues to exist despite a change in the children's domicile.

A definition of what constitutes a custodial environment is set forth in MCL 722.27(c); MSA 25.312(7)(c) as follows:

"The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered."

Recently, the Supreme Court had occasion to reflect on the elements which factor into establishing a custodial environment. In *Baker v Baker,* 411 Mich 567; 309 NW2d 532 (1981), the father, through an *ex parte* order, requested custody of his child. The mother protested the order and custody of the child was restored to her. The father's argument, that Michigan was the established custodial environment because the child had spent the majority of his life in Michigan, was rejected. The Court in *Baker, supra,* 579-580, stated:

"Such an environment depended instead upon a custodial relationship of a significant duration in which Arthur was provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence."

The children have lived in Midland' most of their lives and their father and relatives presently live in Midland. The Ohio home is new. However, the children have been cared for by the mother since their parents separated, with the exception of the two months they resided with their father, pursuant to the *ex parte* order.

For approximately three years now, the children primarily have looked to their mother for their upbringing. The emotional bond between the children and the mother has developed over this period of time. The definition of a custodial environment elaborated on in *Baker, supra,* emphasizes the continuity and strength of an established relationship between a custodian and a child. The custodial environment is the family unit which

cannot be destroyed by a simple change in geographic location. The family unit still will be preserved in the new domicile.

In *Adams v Adams,* 100 Mich App 1, 14; 298 NW2d 871 (1980), where a change in custody was found not to be justified by "clear and convincing" evidence, this Court refused to find that a change in domicile adversely affected a child's living environment. The Court opined:

"The trial judge's emphasis on the fact of plaintiff's moves to Wisconsin and to Oregon and on his assumption that plaintiff and her husband would continue to move from one state to another was similarly improper. As Judge BEASLEY noted in his concurrence to *Hutchins v Hutchins,* 84 Mich App 236, 240; 269 NW2d 539 (1978):

"'We live in a transient society. With respect to the best interests of a child, state boundaries are artificial and meaningless; there is no presumption that bringing up a child in Michigan has any advantage (or disadvantage) over Missouri or Georgia, or any other state. To conclude otherwise would be a meaningless generalization. Restrictions upon where a custodial parent may live, in terms of geography, are not realistic. In every state there are good and bad places to bring up a child.' "

The custodial environment was not disturbed by the move from Michigan to Ohio. The children still remained in the home with their mother. Under these circumstances, the trial court, pursuant to MCL 722.27(c); MSA 25.312(7)(c), properly placed the burden on defendant to prove by "clear and convincing" evidence that the best interests of the children required that the custody order be modified.

Defendant next contends that even if the trial court utilized the "clear and convincing" standard,

the conclusion that the best interests of the children were served by awarding custody to plaintiff was against the great weight of evidence.

MCL 722.23; MSA 25.312(3) contains 10 factors a trial judge is to weigh in custody cases when evaluating how to serve the best interests of the child:

"Sec. 3. 'Best interests of the child' means the sum total of the following factors to be considered, evaluated, and determined by the court:

"(a) The love, affection, and other emotional ties existing between the parties involved and the child.

"(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

"(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

"(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

"(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

"(f) The moral fitness of the parties involved.

"(g) The mental and physical health of the parties involved.

"(h) The home, school, and community record of the child.

"(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

"(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

"(k) Any other factor considered by the court to be relevant to a particular child custody dispute."

Upon a *de novo* review of these factors we cannot say that the finding of the trial court was against the great weight of evidence, especially where the "clear and convincing" standard controls the disposition of the change in custody order.

Admittedly, the trial judge stated that but for the burden of proof placed on defendant:

"I'm not certain that if this was a matter of first impression that I would not have awarded custody of those children to David, assuming that all the circumstances had been the same as they are today at the time that the divorce was entered, if it had been my burden at that time, and if the situation with which David has now existed at the time of the divorce."

This comment does not lead us to conclude that the decision below was against the great weight of evidence. Rather, it simply indicates that the defendant did not carry the burden of demonstrating that the best interests of the children truly would be served by awarding him custody. At most, he established his case by a preponderance of the evidence.

The Legislature, in enacting the Child Custody Act, sought to spare children from the detrimental effects of constantly being shuffled between parents involved in ongoing custody battles. *Becker v Becker,* 95 Mich App 370; 290 NW2d 149 (1980). In furtherance of this policy the Legislature required "clear and convincing" evidence to support change of child custody petitions.

A change in custody is not to be easily facilitated, absent those cases where the factors clearly dictate the best interests of the child will be served by a switch in custody. Recently, the Supreme Court in *Baker v Baker, supra,* 576-578, reaffirmed

the commitment to rigidly adhere to the "clear and convincing" standard set forth in the statute and overturn a decision only when a different outcome is mandated by the great weight of evidence. The Court stated:

"In adopting § 7(c) of the act, the Legislature intended to minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an 'established custodial environment', except in the most compelling cases. * * *

* * *

"Complementing the foregoing provision is § 8 * * * which limits the power of an appellate court to disturb a trial court's custody decision to those instances in which the 'trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error'."

Both parties express great love and concern for the children. The children's parents both have remarried since the divorce and their respective households appear to be stable environments. The moral fitness and physical health of the parties is not challenged.

The isolated incident of child abuse is disturbing. The Protective Services, though, was not alarmed by the incident. Upon completion of an investigation into the matter, the Protective Services Department returned the children, who had just completed a visit with their father, to their mother. The case was closed; the children's home environment was found to be safe and stable.

Although defendant, through an *ex parte* order, was granted custody of the children based on the child abuse incident, the judge admitted he was

misinformed when he granted the order. During
the change of custody hearing he revealed:

"I certainly would not have issued the *ex parte* order
had I been aware that the mother was, in fact, in
possession, physical custody of the children. And I
certainly would not have issued it had I known that
there had been a resolution * * * by the Protective
Services at the time I issued the order. That was not
my impression at the time I issued the order * * * I
now regard that *ex parte* order as having been improvi-
dently issued."

The children expressed a preference to live with
their father. However, the child's preference does
not automatically outweigh the other evidence but
is only one element to evaluate in determining the
best interests of the child. See *Baker v Baker,
supra,* 585.

The fact that the children already were in their
mother's custody had to be heavily weighed by the
trial court to achieve the objective of serving the
best interests of the children. This factor was
highly relevant to the emotional ties the children
had established and the desirabilty of maintaining
continuity.

In the past, even where this Court has found the
evidence to be equally balanced, orders which have
granted custody changes have been set aside. *Out-
calt v Outcalt,* 40 Mich App 392; 198 NW2d 779
(1972). The trial court did apply the "clear and
convincing" standard to the facts. In order to
encourage stability in custody cases and serve the
best interests of the children, this Court must
refrain from reversing the decision absent clear
error of law. We find no ground to upset the
decision.

Affirmed.

V. J. BRENNAN, J., concurred.

BASHARA, P.J. *(dissenting)*. I respectfully dissent. MCL 722.27(c); MSA 25.312(7)(c), quoted in segments in the majority opinion, is controlling. The full text reads as follows:

"If a child custody dispute has been submitted to a circuit court as an original action under this act or has arisen incidentally from another action in a circuit court or another or judgment of a circuit court, for the best interests of the child the court may:

* * *

"(c) modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. *The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.*" (Emphasis added.)

The Michigan Supreme Court in *Baker v Baker*, 411 Mich 567; 309 NW2d 532 (1981), stated the proper point of inquiry in resolving custody modification disputes. The first question is whether an "established custodial environment" exists. If the circuit court determines that such a relationship exists, based upon the criteria stated in the statute, the court may modify the custody order only upon a showing of clear and convincing evidence that a change would be in the best interests of the child. See MCL 722.23; MSA 25.312(3). If no "established custodial environment" is found to exist,

the motion is considered on a mere preponderance of the evidence standard. *Baker*, 579.

In my opinion, the trial court in the case at bar erred in assuming that since custody had been awarded to plaintiff, an "established custodial environment" must be presumed.[1] There being several criteria listed in the statute, it is clear that the mere possession of custody does not raise the movant's burden to the clear and convincing evidence standard.

Because the trial court made a clear error of law on a major issue, reversal is required. MCL 722.28; MSA 25.312(8).

Even if the trial court had correctly considered the established custodial environment question, I would hold that reversal is required. The great weight of the evidence defies a finding that an "established custodial environment" existed in the custodial parent. The trial court's opinion repeatedly describes the custody situation as being in a constant state of "churning". I agree with this characterization based upon the record, considered in conjunction with the factors enumerated in the statute.

Finally, given the fact that the preponderance of the evidence standard should have been used, I find that the trial court erred in holding that the best interests of the children were served by denying the modification petition. The trial court stated that if this was a matter of first impression, he

---

[1] The trial court stated:

"My problem is further complicated by the fact that the statute is very clear that once there has been a custodial environment established by the order of the court, I have to have clear and convincing evidence in order to change that relationship. In other words, even though I didn't have any part of the proceeding establishing the original custodial environment, I am still bound by it; and I am not only bound by it, I am bound to find clear and convincing evidence that a change of that environment is necessary in order to make any change in it."

might have awarded custody to the defendant.[2]
The trial court's findings of fact are replete with
references to defendant's virtues as a parent and
plaintiff's shortcomings. Yet, the court felt con-
strained to award custody to plaintiff, evidently
due to a misconception of defendant's burden of
proof. The great weight of the evidence, examined
in light of the factors enumerated in MCL 722.23;
MSA 25.312(3), supports an order granting the
motion for modification.

I would reverse and remand for entry of an
order in defendant's favor.

---

[2] The trial court held:

"I'm not certain that if this was a matter of first impression that I
would not have awarded custody of these children to David, assuming
that all the circumstances had been the same as they are today at the
time that the divorce was entered, if it had been my burden at that
time, and if the situation with which David has now existed at the
time of divorce. That is, he is remarried to a stable woman who is
capable of assisting him in rearing children. Unfortunately, he was
not at the time of the divorce in that situation."