WILSON v UPELL

Docket No. 61030. Submitted May 12, 1982, at Lansing.—Decided August 25, 1982.

Amanda K. Upell was born out of wedlock on December 29, 1977. She was raised by her mother, plaintiff Patricia Wilson, from birth. Her father, defendant James Upell, visited her regularly and paid child support. Plaintiff brought a paternity action in the Lenawee Circuit Court and an order of filiation was entered. On June 25, 1981, defendant moved for a change of custody and other relief. The court, Rex B. Martin, J., determined that an established custodial environment existed but concluded, after weighing all the statutory factors, that there was clear and convincing evidence that Amanda's best interests would be served by a change of custody from plaintiff to defendant. Plaintiff appealed. *Held:*

ALLEN, P.J., recited the standard of review. Review of the trial court's determination in a child custody case is *de novo,* but the Court is bound by the provisions of the Child Custody Act and must affirm a judgment granting custody of a child to one of the parents unless it finds that the trial court committed clear legal error in making the decision, made findings of fact against the great weight of the evidence, or committed a palpable abuse of discretion. He noted that the trial court applied the correct legal standard to the established custodial environment, *i.e.,* that it may be changed only when it is shown by clear and convincing evidence to be in the best interests of the child. He reviewed the evidence and did not find that the trial court palpably abused its discretion in ordering the change. He would affirm.

C. J. FALAHEE, J., joined for affirmance, noting that the case was close and that the trial judge had the opportunity to view the witnesses.

Affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 136.

5 Am Jur 2d, Appeal and Error §§ 772, 839.

24 Am Jur 2d, Divorce and Separation § 779.

[2, 3] 24 Am Jur 2d, Divorce and Separation § 819 *et seq.*

CYNAR, J., dissented. His review of the evidence led him to conclude that Amanda's best interest would be served by a return to her mother's home. He would reverse.

OPINION BY ALLEN, P.J.

1. PARENT AND CHILD — CHILD CUSTODY ACT — APPEAL.

Review of the trial court's determination in a child custody case is *de novo,* but the Court is bound by the provisions of the Child Custody Act and must affirm an order or a judgment granting custody of a child to one of the parents unless it finds that the trial court committed clear legal error in making the decision, made findings of fact against the great weight of the evidence, or committed a palpable abuse of discretion (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY ACT — CHANGE OF CUSTODY.

The Child Custody Act provides that an established custodial environment of a child may not be changed by the trial court unless there is presented clear and convincing evidence that the change is in the best interest of the child (MCL 722.27[c]; MSA 25.312[7][c]).

3. PARENT AND CHILD — CHILD CUSTODY ACT — CHANGE OF CUSTODY.

The Child Custody Act attempts to standardize the criteria for resolving child custody cases by declaring that the ultimate standard for the award of custody, *i.e.,* the best interest of the child, is to be determined by evaluation and consideration of ten specifically identified factors; the Legislature also intended to minimize the prospect of unwarranted and disruptive orders changing custody and to erect a barrier against removal of a child from an established custodial environment, except in the most compelling cases (MCL 722.21 *et seq.;* MSA 25.312[1] *et seq.).*

*Robbins & McKenzie,* for plaintiff.

*Koselka & Koselka,* for defendant.

Before: ALLEN, P.J., and CYNAR and C. J. FALA-HEE,* JJ.

ALLEN, P.J. Plaintiff appeals as of right from a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

decision and order of the Lenawee Circuit Court dated October 21, 1981, changing the custody of the parties' child, Amanda Kelley Upell, from plaintiff, the mother, to the defendant, the father.

Amanda was born out of wedlock on December 29, 1977. She was raised by her mother until the time of the custody hearing. During this time the father regularly exercised his visitation rights and maintained child support payments.

The trial court determined that an established custodial environment existed but concluded, after weighing all the factors listed in MCL 722.23; MSA 25.312(3), that there was clear and convincing evidence that Amanda's best interests would be served by changing custody from plaintiff to defendant.

Our review of a child custody case is *de novo,* *Hensley v Hensley,* 357 Mich 3; 97 NW2d 615 (1959), but we also are bound by § 8 of the Child Custody Act, which states:

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court *shall be affirmed on appeal* unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a *clear legal error* on a major issue." (Emphasis added.) MCL 722.28; MSA 25.312(8).

The Supreme Court has interpreted this provision as requiring affirmance of a trial judge's decision unless the trial court committed clear legal error, made findings of fact against the great weight of the evidence, or committed a palpable abuse of discretion. *Baker v Baker,* 411 Mich 567, 573-574; 309 NW2d 532 (1981).

Plaintiff contends in this appeal that the court committed a clear legal error, claiming the court

applied an incorrect standard in determining that
a change of custody was warranted. We disagree.
The trial court clearly stated that an established
custodial environment existed and that in order to
remove Amanda from that environment clear and
convincing evidence was needed that the change
would be in her best interests. This is the correct
legal standard. MCL 722.27(c); MSA 25.312(7)(c);
*Baker, supra.*

Plaintiff also contends that the court palpably
abused its discretion in ordering the change. Con-
sideration of this argument requires us to review
carefully all the evidence before the court.

The trial court recognized that both parents
were intelligent, capable, and loved Amanda very
much. Both had steady jobs, although the court
observed that defendant had a better paying job
and additional seniority at the Fisher Body plant
where both parents worked. Both parents provided
adequate care and supervision for Amanda during
their working hours; the mother, with her sister in
her sister's home, and the father, with his wife of
two and one-half years, who was a homemaker and
cared for Amanda in the home.

The court found that Amanda's mother had one
"great plus", she had cared for Amanda through
"thick and thin". Evidence showed that, while
plaintiff was hospitalized for a period of time, she
cared for the child by having the hospital place a
crib in her room. Moreover, when Amanda was
suspected of having spinal meningitis and was
hospitalized, plaintiff was at the hospital for ex-
tended periods.

Other factors weighed against continuing cus-
tody with the mother. The court expressed concern
over her weaker physical and emotional health,
evidenced by two periods of hospitalization, once

for overuse of prescription drugs, since Amanda's birth. The court also expressed concern over the live-in relationship plaintiff maintained intermittently for approximately three years with Michael Vaughn, whom she has since married. Finally, the court was troubled by the four moves that plaintiff made in the year before she purchased a home with Mr. Vaughn.

It should be noted that at the time of the custody hearing there was no evidence that the moves or plaintiff's relationship with Mr. Vaughn had been harmful to Amanda. The court could conclude from this evidence, however, that plaintiff was less likely to provide a stable and secure environment for Amanda.

Several factors weighed strongly in favor of changing custody to the father. Defendant had married and, for two and one-half years, established a stable home environment. The court observed that defendant's marriage appeared more likely to be permanent than plaintiff's relationship with Mr. Vaughn, as plaintiff and Mr. Vaughn had been separated for a time, and at the time of the hearing had not married. Defendant's physical and emotional health are apparently stronger than plaintiff's. The court also noted that defendant was likely to provide a more moral atmosphere for Amanda, as defendant's wife expressed more concern for religious upbringing and attended church regularly, and defendant had never lived with a woman out of wedlock except for his brief stay with the plaintiff. Finally, the court observed that defendant's wife, who would care for Amanda, demonstrated her love for the child, expressed a desire to have custody, and would make a good parent. Balanced against this was the court's observation that Michael Vaughn had stated no desire to have custody of Amanda.

Were the trial court's task merely to determine whether the evidence preponderates for one parent, we would have no difficulty affirming the court's decision, for it is undeniable that the evidence at least weighs in favor of defendant's custody. As the court's power to change an established custodial environment is limited by the requirement that there be clear and convincing evidence that a change is in the child's best interests, MCL 722.25; MSA 25.312(5), our task is more difficult. The Supreme Court has observed that this provision is intended "to erect a barrier against removal of a child from an 'established custodial environment', except in the most compelling cases". *Baker, supra,* 577.

We do not believe that the court palpably abused its discretion in finding that this was such a case. Defendant has demonstrated that he is the more likely parent to provide a stable environment, to provide for Amanda's material needs, and to give Amanda the physical and emotional support she will need throughout her life. We do not believe that defendant must demonstrate that plaintiff has been an unfit mother. We believe that the trial court could find on the evidence before it that Amanda would unquestionably have a chance at a better life in the custody of her father. This presents a compelling case for changing the established custodial environment.

Affirmed. Costs to defendant.

C. J. FALAHEE, J. *(concurring).* I join with Judge ALLEN in affirming the trial court. Our review of the trial court's decision is governed by MCL 722.28; MSA 25.312(8):

"To expedite the resolution of a child custody dispute

by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue."

Although much of the evidence in the trial court was favorable to plaintiff-appellant, and the trial judge indicated that by stating that she had cared for Amanda through "thick and thin", I cannot say that his decision was against the great weight of the evidence, or that there was an abuse of discretion. I find this to be a close case. My sympathy is with the plaintiff-appellant, however, the trial judge had the opportunity to observe the parties and witnesses which is always beneficial. This being a difficult case for the trial judge, that could have been helpful in making his decision. This Court does not have the benefit of seeing and observing the witnesses.

I find that the trial court should be affirmed.

CYNAR, J. *(dissenting)*. I must respectfully dissent.

Amanda Kelley Upell was born out of wedlock on December 29, 1977. At the time Amanda was born, her parents (plaintiff and defendant) had already determined that any attempt at marriage would be unsuccessful. Amanda grew up from her birth living with plaintiff. At the time of the custody trial below, Amanda had lived with her mother for three and one-half years and had been raised as a happy, healthy, and well-adjusted child.

The trial court determined that an established custodial environment existed but concluded, under MCL 722.27; MSA 25.312(7), that there was clear and convincing evidence that Amanda's best interests would be served by changing her custody

from plaintiff to defendant. The trial judge was concerned because plaintiff and Amanda had moved four times in three and one-half years, plaintiff was physically and emotionally weaker than defendant, and plaintiff and Amanda were living with plaintiff's fiancé outside of a marriage relationship. Defendant was concerned about Amanda's moral upbringing because plaintiff was living out of wedlock with her fiancé. Defendant had lived out of wedlock with the plaintiff as well as his present wife. It is noted plaintiff married her fiancé in January, 1982. The trial court also noted that, in defendant's household, Amanda would be cared for during the day by defendant's new wife, while plaintiff took Amanda to plaintiff's sister during the working day.

The trial court sought to establish Amanda in the home where she would find the more stability and the more moral atmosphere. The court recognized that Amanda's ties to her mother were stronger but reasoned that the increase in stability (from a home situation where plaintiff and Amanda had moved several times to a house where defendant had lived for four years) and in morality compensated Amanda for the upset in leaving her mother.

If this were an original divorce action and Amanda had previously been raised by both parents, I might agree. In such a situation, the trial court should balance the assets each parent could bring to the child's upbringing and determine the best interests of the child from this balance sheet. Amanda, however, has lived her entire life with her mother and has formed a deep and lasting bond with her. She has prospered in her mother's care and has grown to be a happy and well-cared-for child.

It is noted that this is not a case where the custodial parent placed her own pleasure before her child's best interest. Plaintiff repeatedly testified that she would alter her living arrangement with her fiancé by either marrying him earlier than planned or breaking off her relationship with him rather than give up Amanda. Plaintiff resolved her infrequent health problems in ways which reflected her concern for her daughter and cared well for Amanda even in times of great stress in plaintiff's life. As the trial court stated: "Plaintiff has actually raised the child through thick and thin and has provided for her." Amanda's best interests would be served by a return to her mother's home. I would reverse for the reasons stated herein.