CARSON v CARSON

Docket No. 88153. Submitted June 26, 1986, at Grand Rapids. Decided November 17, 1986.

Plaintiff, Cheryl J. Carson, and defendant, Charles R. Carson, were divorced in the Kalamazoo Circuit Court in 1979. Custody of their minor child was given to plaintiff. Defendant petitioned for a change of custody in 1985. The trial court found that plaintiff's home was an established custodial environment. The court went on to make findings regarding the various factors to be considered in determining the issue of custody. The court found that the evidence weighed in favor of the father on some factors, in favor of the mother on some factors, and equally in favor of both on the remaining factors. The court, Charles H. Mullen, J., granted custody to defendant. Plaintiff appealed.

The Court of Appeals *held:*

1. Review of child custody cases by the Court of Appeals is de novo. However, all findings of the trial court must be affirmed on appeal unless they are against the great weight of evidence. The findings of the trial court were not against the great weight of evidence.

2. The court was correct in finding an established custodial environment. The Child Custody Act requires clear and convincing evidence of a compelling reason for a change of custody in order to change an established custodial environment. The court, however, seemed to construe the requirement as merely an evidentiary standard which would allow a change of custody if it could be shown by clear and convincing evidence that a marginal, though distinct, improvement would be gained by the child through a change in custody. Thus, the court erred.

3. The Court of Appeals could find no compelling reason to change custody.

4. The proper remedy on appeal from an improperly entered

REFERENCES

Am Jur 2d, Appeal and Error §§ 123-126, 702 *et seq.*

Am Jur 2d, Divorce and Separation §§ 1010 *et seq.*

Court's power to modify child custody order as affected by agreement which was incorporated in divorce degree. 73 ALR2d 1444.

See also the annotations in the Index to Annotations under Appeal and Error.

order changing custody is a remand for a new hearing to determine, initially, whether a new custodial environment has been established.

Reversed and remanded with instruction.

1. PARENT AND CHILD — CHILD CUSTODY — APPEAL.
   Review of child custody cases by the Court of Appeals is de novo; however all findings of the trial court must be affirmed on appeal unless they are against the great weight of evidence (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY ACT — CHANGE OF CUSTODY — BURDEN OF PROOF.
   The Child Custody Act requires clear and convincing evidence of a compelling reason for a change of custody in order to change an established custodial environment (MCL 722.27[c]; MSA 25.312[7][c]).

3. PARENT AND CHILD — CHANGE OF CUSTODY — APPEAL — REMEDIES.
   The proper remedy on appeal from an improperly entered order changing custody is a remand for a new hearing to determine, initially, whether a new custodial environment has been established.

*Birkhold & Associates, P.C.* (by *Suzanne M. Fish* for *Edgar A. Hord*), for plaintiff.

*Harry Cantos, Jr.,* for defendant.

Before: R. B. BURNS, P.J., and R. M. MAHER and F. D. BROUILLETTE,* JJ.

PER CURIAM. This is an appeal from the October 11, 1985, order of the Kalamazoo Circuit Court ordering a change of custody to the defendant father.

The parties were married on May 24, 1975. Their minor child, Sarah Jenness Carson, was born on November 7, 1976. In the judgment of divorce, entered July 30, 1979, custody of the minor child was awarded to the plaintiff mother. Defendant was granted visitation during alternate

---

* Circuit judge, sitting on the Court of Appeals by assignment.

holidays, alternate weekends and three weeks per summer. On June 28, 1985, nearly six years after the award of custody to the plaintiff mother, the defendant father filed his petition for a change of custody.

Evidentiary hearings were held on September 4 and 6, 1985. The trial court subsequently found that the plaintiff mother's home was an established custodial environment within the meaning of MCL 722.27(c); MSA 25.312(7)(c) and proceeded to review the evidence in light of the eleven factors set forth in MCL 722.23; MSA 25.312(3). The trial court found in favor of the defendant father on the following factors:

> (a) The love, affection and other emotional ties existing between the parties involved and the child.
>
> * * *
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> * * *
>
> (i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference. [See MCL 722.23; MSA 25.312(3).]

The trial court found other factors to weigh in favor of continuing custody of the mother:

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> * * *
>
> (h) The home, school, and community record of the child. [See MCL 722.23; MSA 25.312(3).]

The remaining, specifically designated factors were found by the trial court to weigh equally in favor of both parents. However, under factor (k), any other factor considered by the court to be relevant to a particular child custody dispute, the trial court commented at length:

In this case it is apparent that the mother and the father are very different individuals with different lifestyles. The father is self-assured and proud of his accomplishments. His lifestyle is more affluent, and the home is located in a fairly new suburb with a large lot next to a play area.

The mother seems to be a sensitive individual, functioning more on an emotional level. She probably tends to be less organized than the father and does tend to be late.

During the course of the trial the Court constantly observed both of these parties both while they were on the witness stand as well as while testimony of other witnesses was being taken.

Defendant is, in the judgment of this Court, serious and most concerned about Sarah. He appears conscientious.

Plaintiff is a gentle, articulate lady, calm and sincere.

Plaintiff has partially explained away some of the school work problems, the tardiness, slowness in medical attention, lateness for visitation and other complaints which the Defendant has, but there emerges to this Court a pattern of lesser responsibility on the part of the Plaintiff. And the Court has been impressed by the testimony and the evidence from the defendant that he can provide this.

I think another example of what I've just said is the request to adjourn this case. The first request to adjourn came because the parties had made plans—or the mother had made plans for a bike race or some bike contest. And the second request for adjournment was because the family had made

plans for a trip to Chicago on the day of the trial. That request was withdrawn.

But here we have, I would think, one of the most important things in the lives of these two parents and a question as to priorities in wanting to postpone the trial so that something at least in this Court's judgment of a lesser importance could take place.

This goes, again, to a very subjective conclusion which the Court reaches with regard to what are the values that a person lives by and how are these values inculpated in the child.

Kalamazoo Psychology and the Friend of the Court have indicated that Sarah is doing all right where she is. But this court is satisfied that it has an obligation to do what is the best for Sarah, and the home with the Defendant, in this Court's judgment, will provide that greater chance.

I think, too, there is a greater intra-family support in the relationship which Sarah has with Heidi, whom she adores.

This Court considered joint custody, considered it seriously at one stage in my deliberations here. Finally concluded that the two contrasting life-styles are so different that to force the parents to agree on decisions they might have to make would render the use of joint custody improper in this case.

Another factor that the Court considered was that this is not a spur-of-the-moment decision on the part of the Defendant; that he has waited for a period of a year-and-a-half until he was sure that that was going to be for the best interests of Sarah and that that was really what she wanted.

Finally, again going back to the obligation on the Court and on the parents to look for what is for the best interests of the minor child, during the Court's questioning of the Plaintiff, Plaintiff mother said that she wants the Court to know how dear Sarah is to them, prays that they won't be separated; that Sarah is a part of their hearts and very dear.

This Court had to be and was impressed with

the sincerity of these comments, and I believe that Plaintiff means exactly what she says. And I salute her and congratulate her for it.

But the test is not what satisfies the parents emotionally, but what is best for Sarah.

Based, then, upon this opinion, although the case is close and has been most difficult for this Court, based upon the analysis which this Court has given, the Court is satisfied that the Defendant has carried the burden of proof by clear and convincing evidence.

The plaintiff mother first argues that the trial court's findings were erroneous as to three of the factors under MCL 722.23; MSA 25.312(3). Review of a trial court's findings in a child custody case is de novo. *Wilkins v Wilkins,* 149 Mich App 779, 786; 386 NW2d 677 (1986), citing *DeGrow v DeGrow,* 112 Mich App 260, 265; 315 NW2d 915 (1982). However, we are bound to affirm the trial court's findings unless they are against the great weight of the evidence. MCL 722.28; MSA 25.312(8).

The plaintiff mother challenges the trial court's finding on factor (b). MCL 722.23(b); MSA 25.312(3)(b). The trial court explained:

Factor B: The capacity and disposition of the parties involved to give the child love, affection and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

Both parties seem capable and disposed to provide the minor child with love, affection and appropriate guidance. They have written self-evaluations, which this Court has reread over the weekend. I think I've read both of them three times now. And I think it's appropriate to mention, as I did at the trial, that the Court was very impressed with the clear and articulate statements by both parties. Probably the best self-evaluations the

Court has had the opportunity to read in many, many custody cases that it's tried.

The mother has always been the primary parent and has been most involved in Sarah's education.

While the Defendant's father was a minister, neither party now has an established relationship with any particular church or other religious affiliation, even though the principles of Christianity are employed and emphasized and practiced in each home.

And I was a little bit distraught in finding that there was no particular affiliation with a church. Probably 95 percent of the criminals that I see before me come from homes where there's no established custodial—or no established religious affiliation. Certainly I don't think Sarah is ever going to become a criminal nor do I have particular bias as to what religion or creed any party should have, except to say I think there is a greater foundation where there is this affiliation, and the Court didn't see it in this case.

In any event, it's the Court's feeling with regard to Factor B that both parties are equal.

As the plaintiff mother notes, there was testimony that she attends North Presbyterian Church on a weekly basis and that she takes Sarah with her when she is home. However, the evidence also suggests that plaintiff's attendance has been somewhat erratic over the past year and that Sarah was not enrolled in any church education program. While the evidence also suggests that the defendant father has no church affiliations, Sarah has apparently received some religious instruction from her paternal grandfather, a Methodist minister. We construe the trial court's findings on this factor as concluding that, although Sarah has received some exposure to religious training through both parents, neither has instilled or is likely to instill a solid religious foundation in her

life. We are unable to say that the trial court's conclusion as to this factor was against the great weight of the evidence.

The plaintiff mother also challenges the trial court's findings as to factor (c):

> Factor c: The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this State in place of medical care, and other material needs.
>
> As in the preceding section, there are two parts to this. First is the capacity, and second is the disposition.
>
> The Court is satisfied that given the love both of these parents have for Sarah, they will see that the needs of the child will be met. So on the disposition part of that, I'm satisfied that there's no way I can distinguish between either the mother or the father.
>
> The other part is the capacity. Here the Plaintiff's income is very recent. She just has started her babysitting service. So the amount of money received is probably minimal. No figures were given as to the income at the time of trial.
>
> The income from her husband is $170 a week.
>
> In the case of the Defendant and his present wife, both of these parties are employed, netting together $461 a week.
>
> It is clear, therefore, that the Defendant and his wife have a greater capacity to provide for Sarah. Therefore, this must be awarded to the Defendant.

The plaintiff mother argues that the trial court gave no consideration to her babysitting income. We disagree. The trial court clearly considered the babysitting income, but gave it little weight in view of the fact that the plaintiff had only begun babysitting a week before trial. In view of the very limited record of earnings shown by the plaintiff, we cannot say that the trial court's conclusion was

against the great weight of the evidence. Furthermore, we cannot find that the trial court gave disproportionate weight to the greater income of the defendant father. See *Dempsey v Dempsey,* 409 Mich 495; 296 NW2d 813 (1980).

The plaintiff mother also challenges the trial court's findings as to factor (i):

> Factor i: The reasonable preference of the child, if the Court deems the child to be of sufficient age to express preference.
>
> The Court interviewed this little girl in chambers, found Sarah to be an alert, bright child. I fell in love with her. I told her I didn't have any little girls at my house, tried to talk her into coming to live with me, but she refused. I did find that she liked jelly beans quite well.
>
> She had told the investigator for the Friend of the Court she'd rather be with her father. I think I was impressed in my interview with Sarah in chambers that she loves both her mother and father. She's indicated, and I don't think this comes as any surprise to either parent, indicated that she'd wanted to live with her father for some time, that she enjoys Heidi; she draws considerable strength from her.
>
> I was somewhat impressed, though, that her choice at age eight-and-a-half was very definite, even though she loved her mother, and from the vantage point of an eight-and-a-half year old, seemed to have a pretty firm foundation. So that factor is awarded to the Defendant.

The plaintiff mother argues that the trial court double-weighted this factor by also using it under factor (a). We agree that the trial court gave consideration to this factor under both MCL 722.23; MSA 25.312(3) subparagraphs (a) and (i). However, the factors have some natural overlap in that a child's stated preference to live with one parent may be indicative of greater emotional ties

with that parent. While it is true that, in this case, the minor child's preference for living with her father is influenced by her desire to live with her stepsister Heidi and her preference for her father's neighborhood, we do not believe that it is possible to entirely separate a child's emotional attachment to her father from her preference for his circumstances. In any case, we are inclined to affirm the trial court's finding on the amorphous factor of love and emotional ties in the absence of significant contrary evidence in the record. Here there is none. Thus, we conclude that the great weight of the evidence does not contradict the trial court's findings on either factor (a) or (i).

The plaintiff mother's second argument is that the trial court erred in the weight accorded the various factors and that there was not clear and convincing evidence that a change of custody was in the best interests of the child. The Child Custody Act provides:

> If a child custody dispute has been submitted to a circuit court as an original action under this act or has arisen incidentally from other actions therein or orders or judgments thereof, for the best interests of the child the court may:
>
> * * *
>
> (c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. [MCL 722.27(1); MSA 25.312(7)(1).]

Here the trial court correctly found that there

was an established custodial environment in the home of the plaintiff mother. Thus the trial court was precluded from modifying the custody order unless the defendant father presented clear and convincing evidence that a change was in the best interest of Sarah. The trial court apparently construed that statutory requirement as merely an evidentiary standard which would allow a change of custody if it could be shown by clear and convincing evidence that a marginal, though distinct, improvement would be gained by the child through a change in custody. Thus, the trial court itself remarked that both parents seem capable and disposed to provide the minor child with love, affection and guidance. The trial court also noted that both the psychological and social work reports indicated that Sarah was "doing all right where she is." Indeed, the trial court's most significant complaint about the plaintiff mother's performance was that she tends to be tardy and procrastinates.

We concede that it may be possible to read the "clear and convincing evidence" test of MCL 722.27(c); MSA 25.312(7)(c) as merely an evidentiary rule which would allow a change of custody based upon clear and convincing evidence that a marginal improvement in the child's life would occur. However, our Supreme Court has held:

> In adopting § 7(c) of the act, the Legislature intended to minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an "established custodial environment", except in the most compelling cases. [*Baker v Baker,* 411 Mich 567, 576-577; 309 NW2d 532 (1981).]

We therefore construe this provision to be a substantive standard as well. That is to say, we con-

strue MCL 722.27(c); MSA 25.312(7)(c) to require clear and convincing evidence of a compelling reason for a change in custody when an established custodial environment has been proven. Thus, we conclude that there was a clear legal error on a major issue in the trial court proceedings. MCL 722.28; MSA 25.312(8). In addition, we find no compelling reason for a change in custody and therefore conclude that the trial court's ruling was against the great weight of the evidence. MCL 722.28; MSA 25.312(8). We therefore reverse the trial court's modification of the decree of divorce.

Nevertheless, as we explained in *Blaskowski v Blaskowski,* 115 Mich App 1, 9; 320 NW2d 268 (1982), we consider the statements of policy contained in the Child Custody Act, 1970 PA 91, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.,* to be superior to the symmetry of common law appellate remedies and even to the rights of the plaintiff who has prevailed on appeal. We therefore remand this case for a new evidentiary hearing at which it may be proven that an established custodial environment has been created in the home of the defendant father during this appeal. If an established custodial environment has been created in the defendant father's home, the burden of proof will shift to the plaintiff mother under MCL 722.27(c); MSA 25.312(7)(c).

Reversed and remanded.