HARPER v HARPER

Docket No. 151378. Submitted January 20, 1993, at Lansing. Decided
     April 20, 1993, at 9:00 A.M. Leave to appeal denied, 443 Mich __.
John A. Harper, Jr., obtained a judgment of divorce from Terri
     Harper in the Kent Circuit Court, Dennis B. Leiber, J. The
     parties were awarded joint legal custody of their two sons, with
     physical custody being granted to the plaintiff. The award of
     physical custody represented a change in the established custo-
     dial environment. The defendant appealed.
     The Court of Appeals held:
     1. A court may not issue an order that changes the estab-
     lished custodial environment of a child unless clear and con-
     vincing evidence is presented that such a change is in the best
     interest of the child.
     2. The custody orders and judgments of a trial court are
     affirmed unless it made findings of fact against the great weight
     of the evidence, committed a palpable abuse of discretion, or
     made a clear legal error on a major issue.
     3. In this case, the trial court committed no error in deter-
     mining the best interests of the children were served by award-
     ing physical custody to the plaintiff. The trial court's view of
     the evidence is plausible in light of the record in its entirety.
     Affirmed.

*Kenneth J. Sanders,* for the plaintiff.

*Kenneth C. Hoogeboom,* for the defendant.

Before: BRENNAN, P.J., and CAVANAGH and COR-
RIGAN, JJ.

PER CURIAM. In this divorce action, defendant
mother appeals the award of physical custody of
the parties' two minor sons, now ages nine and
five, to plaintiff father, MCL 722.23; MSA
25.312(3). We affirm.

The parties were married in 1983. A son, Drake, was born to them in 1984. In early 1987, plaintiff suggested that the parties separate shortly before he learned that defendant was once again pregnant. Ultimately, defendant moved with Drake to Kalamazoo, where she took courses to renew her teaching certification. August (Gus), the parties' second child, was born in Kalamazoo, in November 1987. The parties planned to divorce when defendant completed her course work.

After renewing her teaching certification, defendant returned to the marital home with the children. Plaintiff filed for divorce in April 1989. His contemporaneous motion for exclusive possession of the marital home was denied. The family remained together, despite the divorce proceedings, until plaintiff moved out in May 1990.

The case was tried in the Kent Circuit Court at various times in 1991-92. The parties were evaluated by a social worker who recommended the award of permanent custody to plaintiff, which was a change in the established custodial environment. The circuit court ultimately granted the parties joint legal custody, but awarded plaintiff physical custody of the boys. Since April 1992, both children have resided with plaintiff in the marital home.

Because the circuit court saw the witnesses and heard the testimony, this Court gives great weight to its findings of fact. *Beason v Beason,* 435 Mich 791, 799-803; 460 NW2d 207 (1990). We must accept those findings unless they are clearly erroneous. *Id.* at 803, citing *Anderson v Bessemer City,* 470 US 564, 573-574; 105 S Ct 1504; 84 L Ed 2d 518 (1985). A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed. *Beason, supra* at 805. If the trial

court's view of the evidence is plausible, the reviewing court may not reverse. *Id.*

This Court reviews child custody cases de novo. *Rummelt v Anderson,* 196 Mich App 491, 496; 493 NW2d 434 (1992). The clear-error test has always been part of the proper application of the de novo review standard, but its application is confined to the review of factual issues. *Sparks v Sparks,* 440 Mich 141, 150; 485 NW2d 893 (1992). We will affirm all custody orders and judgments unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or made a clear legal error on a major issue. *Rummelt, supra* at 496, citing MCL 722.28; MSA 25.312(8). See also, e.g., *Treutle v Treutle,* 197 Mich App 690, 692; 495 NW2d 836 (1992).

MCL 722.27(1)(c); MSA 25.312(7)(1)(c), which controls the determination of custody matters where an existing order establishes custody, provides in part:

> The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

The Supreme Court examined the standard of review for changes of "custodial environment" in *Baker v Baker,* 411 Mich 567; 309 NW2d 532 (1981). There the Court held:

> In adopting § 7(c) of the [Child Custody Act], the Legislature intended to minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an "established custodial environment,"

except in the most compelling cases. [*Id.* at 576-577.]

A number of cases after *Baker* have cited this language, but have overlooked the "except in the most compelling cases" requirement. See, e.g., *Duperon v Duperon,* 175 Mich App 77, 82; 437 NW2d 318 (1989); *DeGrow v DeGrow,* 112 Mich App 260, 270; 315 NW2d 915 (1982). In *Schubring v Schubring,* 190 Mich App 468; 476 NW2d 434 (1991), the circuit court denied the noncustodial parent's motion to change custody, made when the custodial parent planned to move out of state, apparently because the children's "established custodial environment" was with the custodial parent. This Court reversed, primarily because changing custody would allow the children to remain in the same city where they were already thriving. *Id.* at 471. Because the proposed change of custody here does not involve relocating the children to another community, *Schubring* is not binding.

Two other cases provide greater guidance. In *Carson v Carson,* 156 Mich App 291; 401 NW2d 632 (1986), the circuit court, after finding an established custodial environment with the mother, granted custody to the father. Citing the "compelling cases" language in *Baker, supra,* this Court reversed after concluding that more than "marginal" improvement in the child's life is required to justify a change in custody. *Id.* at 301. The Court nevertheless remanded for an evidentiary hearing at which the father could attempt to show that an established custodial environment had developed during the appeal period. If he succeeded, "the burden of proof will shift to the plaintiff mother under MCL 722.27(c); MSA 25.312(7)(c)." *Id.* at 302.

In *Wilson v Upell,* 119 Mich App 16; 325 NW2d

611 (1982), the mother had custody of her daughter from birth. The father was awarded custody when the child was four years old. Citing *Baker, supra,* this Court concluded:

> We do not believe that the court palpably abused its discretion in finding that this was such a [most compelling] case. Defendant has demonstrated that he is the more likely parent to provide a stable environment, to provide for Amanda's material needs, and to give Amanda the physical and emotional support she will need throughout her life. We do not believe that defendant must demonstrate that plaintiff has been an unfit mother. *We believe that the trial court could find on the evidence before it that Amanda would unquestionably have a chance at a better life in the custody of her father. This presents a compelling case for changing the established custodial environment.* [*Id.* at 21. Emphasis supplied.]

This case resembles *Wilson.* On this record, we conclude that the improvement in the children's lives from changing custody to their father would be more than "marginal."[1] We do *not* find that defendant is an unfit mother. After reviewing this record, we firmly believe that the parties' sons will

---

[1] Despite the rigorous standard of review, courts have not hesitated to order a change in custody when it was in the child's best interest. See, e.g., *Theroux v Doerr,* 137 Mich App 147, 150; 357 NW2d 327 (1984) (court will not enforce "continuity" where custodial parent was the beneficiary of a temporary arrangement); *Streicher v Streicher,* 128 Mich App 5, 8; 339 NW2d 661 (1983) (court ordered change of custody, without making finding regarding: "custodial environment"); *Lyons v Lyons (After Remand),* 128 Mich App 203, 204; 339 NW2d 875 (1983) (court ordered change of custody without stating facts of case); *Longhi v Longhi,* 119 Mich App 41, 43; 325 NW2d 617 (1982) (custodial environment established with both parents); *Siwik v Siwik,* 89 Mich App 603, 606; 280 NW2d 610 (1979) ("each case must be judged on its unique facts"; court did not make a finding regarding: custodial environment, but did order change of custody); *Troxler v Troxler,* 87 Mich App 520, 524; 274 NW2d 835 (1978) (affirmed lower court order changing custody).

unquestionably have a chance at a better life with their father.

The circuit court made findings on all the factors enumerated in MCL 722.23; MSA 25.312(3). We reject defendant's contention that the evidence on these points was insufficient to warrant a change of custody.

> *Factor a:* The love, affection, and other emotional ties existing between the parties involved and the child.

The court found that both parents had bonded with the children, but concluded that plaintiff's relationship with them was more consistent. On review, we substantially defer to the superior vantage point of the trial court respecting issues of credibility and preferences under the statutory factors. *Thames v Thames,* 191 Mich App 299, 305; 477 NW2d 496 (1991). Unlike us, the circuit court had the opportunity, as we do not, to observe both parties and witnesses. The circuit court's finding on this factor is not against the great weight of the evidence.

> *Factor b:* The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

The trial court determined that plaintiff's disciplinary techniques were preferable to defendant's and that the parties were equally capable of providing for the children's religious education. There is no dispute about the latter, and we affirm the circuit court on the former.

Defendant spanked the children with a paddle,

while plaintiff used only his hand. The social worker disapproved of any corporal punishment, but testified that using the hand alone was preferable to any "instrument." Plaintiff testified that he had decided that noncorporal discipline was more productive and did not plan to use corporal punishment. Defendant's testimony on this issue was somewhat unclear. She did not want to use corporal punishment, but she sometimes would spank the boys. She testified that a protective-services worker had counseled her to use corporal punishment, if necessary, to teach the boys safety rules.

Whatever the merits of these various disciplinary techniques, we think that the circuit court was most sensitive to the "guidance" prong of this factor. The record reflects that plaintiff was better able than defendant to keep these two very active little boys within bounds. Plaintiff testified that his sons, then four and seven years old often phoned him very late on weeknights when they should have been asleep. Further, for an eighteen-month period, Drake had been habitually late for school because defendant could not stop him from dawdling in the morning.

The social worker who observed sessions with both parents testified that defendant could not effectively guide her sons in a joint task. By contrast, plaintiff could calm them after they had become agitated by their mother. The children went on to perform the same joint task successfully with their father.

> *Factor c:* The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

The circuit court found that the plaintiff was

better equipped on this factor. We agree. Plaintiff had an excellent employment history and had recently become self-employed so he could better accommodate his children's needs. His income was about $39,000 during the previous year. Defendant, despite her recertification, had not yet secured employment as a teacher and worked only part-time. She had recently worked in a Head Start program, but was discharged for undisclosed reasons. As of the March 1992 hearing, defendant had just become employed as a life-insurance agent. Because her income depended on future sales, it was uncertain. (See *Glover v McRipley*, 159 Mich App 130, 137-138; 406 NW2d 246 [1987], in defendant's "precarious" financial position, it was "speculative" to "assume that defendant's financial circumstances are about to bloom." )

We affirm the trial court's finding on this point.

*Factor d:* The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

Throughout their marriage, the parties lived in plaintiff's partially unfinished home, where plaintiff planned to bring the children. The home was unfinished because plaintiff had originally intended to do the interior work himself rather than take out a construction loan. After he decided on the divorce, his attorney told him not to invest extensively in the house. By the time of trial, however, he had paid off the mortgage and was planning to hire a contractor to do the interior work.

The circuit court found that the condition of the home was unfavorable to plaintiff. Although defendant's home was better prepared for the children, the weight of this factor is not sufficient to overcome the other factors adverse to her.

*Factors e and f:* The permanence, as a family unit, of the existing or proposed custodial home or homes; the moral fitness of the parties involved.

Regarding factor e, the court found both parties equal. Neither had family in the Grand Rapids area. The parties do not differ significantly on this factor. Concerning factor f, the circuit court found the parties equal. This issue is not disputed on appeal.

*Factor g:* The mental and physical health of the parties involved.

The court found no significant differences in physical health, but determined that defendant's mental health was inferior to plaintiff's. Although both parties had some difficulties with parenting, defendant's problems appeared to interfere significantly with her ability to safeguard the children's health and well-being.

Over the years, defendant has displayed some serious lapses of judgment, which posed potentially serious threats to the children's health and safety. In child custody cases, the overwhelmingly predominant factor is the welfare of the child. *In re Kidder (On Remand),* 61 Mich App 451, 454; 233 NW2d 495 (1975), remanded on other grounds 395 Mich 51; 232 NW2d 672 (1975); see also, e.g., *Herbstman v Shiftan,* 363 Mich 64, 68; 108 NW2d 869 (1961) ("safety and best interests of child" demand protection); *Hentz v Hentz,* 371 Mich 335, 346; 123 NW2d 757 (1963) ("overriding consideration" is best interests of child). Among the noted instances of defendant's "poor judgment" on this record are:

1. While the children were with defendant in Kalamazoo, Drake, then a preschooler, was found

running in the street at least three times. Apparently he would leave the house while defendant was asleep. After a visit from a protective-services worker, defendant said she was not aware of how much vigilance was required. Defendant, a certified teacher, could hardly claim ignorance about such matters.

2. When Gus was an infant, he ingested a whole bottle of children's vitamins. Defendant did not seek medical attention for him. Later that night, plaintiff insisted on calling the local poison control center and discovered that an overdose of vitamins could be toxic. He immediately obtained medical treatment for Gus, who fortunately suffered no permanent damage.

3. While defendant was living in Kalamazoo, Drake had a series of unexplained illnesses arising from anemia. Defendant did not seek medical treatment for him.

4. While the children were living with defendant, Drake, known as a very active child, would arrive home from first grade at 3:30 P.M. Because defendant often did not return home from work by that time, she told Drake to go to a neighbor's house. Although she testified that she notified the neighbor that she would be late, she did not ask the neighbor to meet Drake's bus. Leaving such judgments to a very active first-grade boy, even for a short time, posed a potentially hazardous situation.

5. Defendant supervised Drake poorly from his infancy. One friend testified that she was unconcerned when Drake began eating dog food as he crawled around on the floor. Drake also developed a severe diaper rash because defendant neglected to change him, although she was usually the only parent available to do so.

6. The children would frequently appear un-

washed for visits with plaintiff. Their socks and underwear were "rotten" and had to be replaced.

8. Defendant struck and shoved plaintiff many times in the presence of the children. She once forced her way into his truck, and also once reached through the truck window to slap him. The social worker testified that witnessing these incidents of aggression contributed to the children's inability at self-control. Drake apparently became very upset at his mother's negative comments about his father.

Plaintiff's daughter, Sara, who was thirteen when her father married defendant, and Sara's best friend both testified that defendant pressured Sara and her friends to stay with her and that defendant became histrionic when she was rejected. Sara testified that defendant followed her to her room after one confrontation and threatened to slash her wrists with a razor blade if Sara would not say she loved her. Defendant's testimony about this incident was unclear. Sara's relationship with defendant later became so strained that she left home or, according to defendant, was sent away.

Certain expert testimony showed defendant suffered from a borderline personality disorder. Both lay and expert testimony unequivocally established that defendant's behavior "created a poor atmosphere for young children," *Ohl v Ohl,* 17 Mich App 14, 15; 168 NW2d 616 (1969), whatever its cause.

Testimony regarding plaintiff's mental health was more favorable to him. Although plaintiff sometimes spoke with the children above their level of intellectual development, he regularly engaged the boys in age-appropriate activities. Plaintiff had no apparent personality disorders or mental instability and had consulted with a specialist

in family therapy. Plaintiff's daughter spoke positively about his relationship with her.

*Factor h:* The home, school, and community record of the child.

The court did not find any difference between the parties on this factor. Because both parents would keep the children in the same school, church, and community, this factor was not significant.

*Factor i:* The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

The court determined that the children were too young to express a reasonable preference. This factor did not weigh in the court's decision.

*Factor j:* The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

The court found no preference between the parties on this variable. Because the parties no longer reside together, any past problems are unlikely to recur.

*Factor k:* Any other factor considered by the court to be relevant to a particular child custody dispute.

The court made no findings on this factor.

Contested child custody cases are not easy. *Bowler v Bowler,* 355 Mich 686, 694; 96 NW2d 129 (1959). The "best interest of the child" test can be highly subjective and individualized. *Raleigh v*

*Watkins,* 97 Mich App 258, 265; 293 NW2d 789 (1980). The decision turns upon the best judgment possible regarding which of two single-parent custodial arrangements will serve the child's best interests. *Baker, supra* at 585-586. We are convinced that the circuit court's account of the evidence is plausible in light of the record viewed in its entirety, and that our result is just. *Bowers v Bowers,* 190 Mich App 51, 53; 475 NW2d 394 (1991).

Affirmed.